THE RICHMOND, FREDERICKSBURG, AND POTOMAC RAILROAD COMPANY, PLAINTIFFS IN ERROR, *v.* THE LOUISA RAILROAD COMPANY.

The legislature of Virginia incorporated the stockholders of the Richmond, Fredericksburg, and Potomac Railroad Company, and in the charter pledged itself not to allow any other railroad to be constructed between those places, or any portion of that distance; the probable effect would be to diminish the number of passengers travelling between the one city and the other upon the railroad authorized by that act, or to compel the said company, in order to retain such passengers, to reduce the passage-money.

Afterwards the legislature incorporated the Louisa Railroad Company, whose road came from the West and struck the first-named company's track nearly at right angles, at some distance from Richmond; and the legislature authorized the Louisa Railroad Company to cross the track of the other, and continue their road to Richmond.

In this latter grant, the obligation of the contract with the first company is not impaired within the meaning of the Constitution of the United States.

In the first charter, there was an implied reservation of the power to incorporate companies to transport other articles than passengers; and if the Louisa Railroad Company should infringe upon the rights of the Richmond Company, there would be a remedy at law, but the apprehension of it will not justify an injunction to prevent them from building their road.

Nor is the obligation of the contract impaired by crossing the road. A franchise may be condemned in the same manner as individual property.

(Mr. Justice DANIEL did not sit in this cause.)

THIS case was brought up from the Court of Appeals of the State of Virginia, by a writ of error, issued under the 25th section of the Judiciary Act.

The facts in the case are stated in the opinion of the court.

It was argued by *Mr. Robinson*, for the plaintiffs in error, and *Mr. Lyons* and *Mr. Johnson*, for the defendants in error.

*Mr. Robinson*, for the plaintiffs in error, made the following points : —

1. That, under the act passed the 25th of February, 1834, incorporating the stockholders of the Richmond, Fredericksburg, and Potomac Railroad Company, Sess. Acts, 1833 – 4, p. 127, there is, by force of the 38th section, copied in the record, at p. 165, and of what has been done under the act, a contract, the obligation of which cannot be impaired by any State law. Fletcher *v.* Peck, 6 Cranch, 135, 136, 137 ; Terrett, &c. *v.* Taylor, &c. 9 Id. 50 ; Wilkinson *v.* Leland, &c. 2 Pet. 657 ; State of New Jersey *v.* Wilson, 7 Cranch, 166 ; Green *v.* Biddle, 8 Wheat. 92 ; Providence Bank *v.* Billings, &c. 4 Pet. 560 ; Dartmouth College *v.* Woodward, 4 Wheat. 637 ; State of New Jersey *v.* Wilson, 7 Cranch, 164 ; Armstrong, &c. *v.* Treasurer

of Athens Co. 16 Pet. 289; Gordon v. The Appeal Tax Court, 3 How. 133.

2. That a court of equity has jurisdiction to protect the plaintiffs in the enjoyment of their chartered privileges, and should award an injunction to restrain the defendants from any acts which would impair the obligation of the contract under which the plaintiffs claim; from any acts which the defendants are bound (whether by contract or duty) to abstain from.   Green v. Biddle, 8 Wheat. 91; Opinion of Kent, J. in Livingston v. Van Ingen, 9 Johns. 585 to 589; Coats v. Clarence Railway Company, 1 Russ. & Mylne, 181; 4 Cond. Eng. Ch. Rep. 378; Frewin v. Lewis, 1 Mylne & Craig, 255; 18 Eng. Ch. Rep. 255; Canal Company v. Railroad Company, 4 Gill & Johns. 3; Osborn v. United States Bank, 9 Wheat. 838, 841; Stevens v. Keating, 2 Phillips, 334; 22 Eng. Ch. Rep. 334; The Attorney-General v. The Great Northern Railway, 3 Eng. Law & Eq. 263; The Great Western Railroad Company v. The Birmingham and Oxford Railroad Company, 2 Phillips, 597; Williams v. Williams, 2 Swanst. 253; Dietrichsen v. Cabburn, 2 Phillips, 52; 22 Eng. Ch. Rep. 52, and class of cases there referred to; Kemp v. Sober, 4 Eng. Law & Eq. R. 64.

3. That the exercise of such jurisdiction should not be declined, because of the provision in the 18th section of the act incorporating the stockholders of the Louisa Railroad Company, Sess. Acts 1835-6, p. 174, sect. 18, or in the 13th section of the act prescribing general regulations for the incorporation of railroad companies.   Sess. Acts 1836-7, p. 107, sect. 13.   For even if those provisions apply to the defendants' work between the junction and Richmond, (and the plaintiffs, p. 22, insist they do not,) yet following, as they do, sections relating to proceedings for ascertaining the damages to a proprietor for the condemnation of his land, it is manifest they were only intended for the case of such a proprietor, asking for an injunction to stay the proceedings of a company which is taking his land for its work, and though under the case of The Tuckahoe Canal Company v. The Tuckahoe and James River Railroad Company, 11 Leigh, 42, cited in the answer, p. 169, 174, they may apply to land of one corporation taken for the work of another, yet they are not intended for, and are inapplicable to the case of a company enjoying a right under a contract with the State, which asks to be protected in that enjoyment against another company, claiming, not under a prior but a subsequent grant.   And 2, whatever may have been the intention of those acts, yet being passed after the grant in the 38th section of the plaintiffs' charter, they cannot be allowed to impair the obligation of the contract arising under that grant; but the plaintiffs claiming under it, are entitled

to whatever is necessary to make that grant effectual and protect them in the enjoyment of their rights. Babcock v. Western Railroad Corporation, 9 Metcalf, 556; Blakesley v. Whieldon, 1 Hare, 180; 23 Eng. Ch. Rep. 180; Green v. Biddle, 8 Wheat. 75; Bronson v. Kinzie et al. 1 How. 319; McCracken v. Hayward, 2 How. 612.

4. That the court, in respect to those matters which are distinctly raised, should declare the right of the plaintiffs, and upon such declaration decree an injunction in terms ascertaining the extent of the right. Cother v. The Midland Railway, 2 Phill. 472; 22 Eng. Ch. Rep. 472.

5. That from the facts stated in the bill, and not denied, and also from the map of Mr. Crozet, it is obvious that the probable effect of allowing the defendants to have a railroad between the city of Richmond and the city of Washington, for that portion of said distance which is from the junction to Richmond, will be to diminish the number of passengers travelling between the city of Richmond and the city of Washington, upon the plaintiffs' railroad, or to compel them, in order to retain such passengers, to reduce the passage-money. And if such would be the probable effect, the defendants (as is contended in the petition, as well as in the bill,) should until the expiration of the thirty years mentioned in the plaintiffs' charter, have been enjoined from constructing their railroad for said portion of the distance. Rankin v. Huskisson, 4 Sim. 13; 6 Eng. Ch. Rep. 7; Blakemore v. Glamorganshire Canal Navigation, 1 Myl. & Keen, 154; 6 Eng. Ch. Rep. 544, and cases before cited. And the defendants having, notwithstanding the warning given by the letter of the 18th of December, 1848, and by the institution of this suit, proceeded with such construction, they might and should, at the hearing, have been enjoined, and ought now to be enjoined from further constructing or using their railroad for that portion of the distance. Lane v. Newdigate, 10 Ves. 192. And if the construction has been completed, the injunction against the use should continue not only until the expiration of said thirty years, but for such time after the thirty years as it may reasonably be supposed would be occupied in the construction, if it had not taken place within the thirty years. For, as the bill insists, the protection will not be preserved to the extent to which it is granted, if immediately on the expiration of the thirty years there can be opened for transportation, a railroad constructed within that period.

6. That although an injunction to the extent mentioned in the preceding point would, as contended in the petition, give no higher security to the plaintiffs than was intended by the legislature, yet if the court do not grant it to that extent, it

should, at least, prohibit acts, the probable effect of which would be to diminish the number of passengers travelling between the city of Richmond and the city of Washington, upon the plaintiffs' railroad, or to compel the plaintiffs, in order to retain such passengers, to reduce the passage-money; it should make such prohibition to whatever extent may be necessary to protect the plaintiffs in the enjoyment of their rights.

7. That the prohibition should be of all transportation of passengers on the defendants' railroad between Richmond and the junction; 1st, upon the ground taken in the bill, and the answer, that he who travels only over a portion of the railroad, equally with him who travels over the whole line, is, within the meaning of the 38th section of the plaintiffs' charter, a passenger travelling between (that is over the whole, or some part of the intermediate space between) the cities of Richmond and Washington; a ground sustained in part by the judge, and strongly fortified by the views presented in the petition, and, 2d, upon the ground that such prohibition is necessary to protect the plaintiffs in respect to passengers travelling the whole distance between those cities. For, in the absence of such prohibition, the Louisa company may take passengers at reduced rates between Richmond and the junction, as pointed out in the bill, and between the junction and Washington or Alexandria give through tickets in conjunction with the Orange and Alexandria railroad.

8. That if the court do not prohibit all transportation of passengers on the defendants' railroad between Richmond and the junction, it should, at the least, prohibit the transportation by the defendants on their railroad of passengers travelling between the city of Richmond and the city of Washington. The necessity for an injunction to this extent is not at all obviated by the concession remarked on in the answer. Nor is the remark of the judge, that "to award the injunction now would be to inflict a present, certain, and serious injury upon one party, to prevent a remote, uncertain, and possible injury to the other," well founded as to the injunction here proposed. For no injury is inflicted on the defendants by requiring them to abstain from what it is their duty to abstain from. While on the other hand, a remedy far more effectual than any at law can be had in equity through its restraining power, which besides awarding the injunction as here proposed, may, and it is submitted, should in aid of such injunction, prohibit through tickets between Richmond and Washington, at points south of Richmond and north of Washington, by the Louisa road.

9. That the final decree in these suits, in the State court, should be reversed in the Supreme Court; and this court should

The Richmond, &c. Railroad Co. v. The Louisa Railroad Co.

proceed to pass such decree as the State court which made such final decree should have passed, to wit: in the second case, for obvious reasons, some of which are stated in the answer to the bill in that case, it should dissolve the injunction and dismiss the bill with costs; and in the first and principal case, it should award such injunction as is proper, and decree against the defendants the costs. The writ of error issued under the act of Congress, is to be so used as to effect the object. Gelston v. Hoyt, 3 Wheat. 303. The mandate for execution should issue to the Circuit Court of Chancery for the county of Henrico. Clerke v. Harwood, 3 Dall. 342.

The points made by the counsel for the defendants, in error, were the following:

I. That this court has no jurisdiction of the case, the court of final resort in Virginia not having pronounced a final decree or judgment, but having simply refused to relieve the complainants by injunction, in the face of the statute of the State. This refusal to allow an appeal is no affirmance of the reasons of the court below.

II. That the appellants have not such a monopoly as they claim. That the grant which they insist upon as contained in the 38th section of their charter is void: 1. Because it is unintelligible. 2. Because it is impracticable, as no standard is furnished in the charter, or elsewhere, by which any tribunal can determine what is the extent of the grant or its limitation; and, therefore, no means exist by which to determine when the grant is violated, and when not, according to its terms; no distance being furnished within which, to the right or left of the existing road, another road shall not be made. The franchise claimed is, therefore, undefined, and therefore void; or, if defined, as the appellants insist, it confers upon them an unlimited power over the territory, highways, and people of Virginia, and over the legislative power of the State, and the power to advance and improve the State, which the legislature had no power to confer, and therefore it is void.

One legislature had no power to say to all future legislatures that there should never be more than one railroad between Richmond and Washington, without regard to the wants of the country and the capacity of this road to meet them; or that there should be but one for thirty years; and still less could it transfer the right so to declare to a petty corporation. The change of the form does not increase the power; the defect still is a want of power. The name of "contract" cannot conceal or justify the usurpation. The power of internal improvement over the State generally, or over a large portion of it, cannot be bartered away by the legislature. The legislature is

clothed with power for the benefit of the people, and the improvement of the State, and a law declaring that it shall not be improved, would be a gross abuse, a usurpation, in fact, of power, which would be void. To that extent the monopoly here claimed goes, if sustained.

III. If the grant is worth any thing, it is only by giving it a reasonable interpretation, having regard to the end proposed, the general interest of the community, and the power of the legislature ; and thus interpreted, it only means that the appellants should have a monopoly of the passengers travelling from Richmond to Washington directly, or to such intermediate point as the Fredericksburg railroad could carry them to. This interpretation the appellants deny, and thus make their grant unintelligible. It was not intended to forbid the construction of a railroad to Winchester, or the Ohio, because, when a passenger reached either of those points, he might get on the Baltimore and Ohio road, and thus get to Washington. Nor was it intended that the people residing five, ten, or twenty miles east and west of the Fredericksburg road, should be denied for thirty years the use of a railroad, unless they would first travel to, and then travel upon, the Fredericksburg railroad.

Taking this view, the most favorable for the appellants which can be taken, the decree in Virginia is correct.

IV. The grant to the appellants, under the most enlarged and extravagant view of it, relates only to the profits of passengers. It has no reference to freights, and was never intended to have, and if intended, cannot, by its words, have the effect to denude the legislature of the power to authorize a railroad to carry agricultural products, and other freights; and therefore the decree in Virginia was right. The court had, therefore, no power to prevent the construction of the road. If it could do any thing, it could only restrain the improper use of it, when a proper case should be made, which was not made by the appellants.

V. There was no violation of the rights of the appellants in authorizing the Louisa Company to cross their road, because they could do so only upon condition of paying the value of the privilege, even to the extent, if necessary, of the entire value of the franchise. A franchise is but a qualified property, and cannot, therefore, be more sacred and inviolable than the unqualified property of the owner in fee, whose property is condemned for the purposes of the franchise; over every franchise the "*jus publicum*" must prevail, as it does over all other property. 3 Leigh, 318; 11 Leigh, 42; 11 Peters, 544, 549, 567, 638, 641, 646; 6 How. 507.

If the opposite conclusion can be maintained, then the monstrous result follows, that the railroad of the appellants is an

impassable barrier between Eastern and Western Virginia, which can never, at any point, be crossed by another railroad. The legislature never intended to erect such a barrier, and had not the power to do it if they would.

VI. If the appellants sustained any wrong, their remedy was not by injunction. 1. Because an injunction must have inflicted enormous and certain mischief upon the appellees, while the injury to the appellants, if it was denied, was uncertain, hypothetical, and might never occur, and could be redressed without an injunction. In such cases an injunction is never awarded.

2. Because the chancery courts in Virginia have, by law, no jurisdiction to grant an injunction in a case like the present. (See acts referred to in the answer, viz., 13th sect. of Gen. Railroad Law, 1837, and 18th sect. of the Charter of the Louisa Company.) And Virginia alone can prescribe the jurisdiction of her own courts. She can mould her remedies as she pleases. She can abolish her chancery courts as New York has done, or she can define their jurisdiction at pleasure; and this court has no power to say that she shall have chancery courts, or, if she has them, they shall exercise a jurisdiction forbidden by her laws. She may be bound to provide some remedy for wrong, but she is the exclusive and sovereign judge of the form of the remedy. But she is not bound to furnish any remedy for the courts of the United States. The judiciary act of the United States applies only when she does provide a remedy.

VII. As to the last bill filed by the appellants, this court can have no jurisdiction. A refusal of an injunction is not a final decree under any interpretation of those words, for a new bill may be presented every day, and the refusal of one is no bar to another. A court may refuse an injunction, and yet at the hearing decide for the plaintiff.

The Supreme Court of the United States does not sit to revise the Virginia chancellors upon applications for injunctions.

The following authorities will be relied upon in the argument by the counsel for the appellees, viz.: —

I. 6 Howard, 209; Gibbons v. Ogden, 6 Wheaton, 448.

II. 11 Peters, 467, 547; 6 Cranch, 133, 135; 3 Dall. 388; Vattel, 4, 14, 40, 41; Domat, book 1, tit. 6, sect. 1; Puffend., book 8, c. 5, sect. 7; Attorney-General v. Burridge, 10 Price, 372, 373; Locke on Government, 304, 307.

III. Johnson's Dictionary — "Between."

V. Vattel, 40, 41, 103; Hawkins v. Barney's Lessee, 5 Peters, 457; Coats v. The Clarence Railway Co., 1 Russell & Mylne, 181.

VI. Eden on Injunction, 236; Earl of Ripon et al. v. Hobart, 3 Mylne & Keen, 169, 174; Attorney-General v. Nichol, 16

Vesey, 342; Bonaparte v. The Camden & Amboy Railroad, 1 Baldwin C. C. Reps., 205; Jackson v. Lamphire, 3 Peters, 280.

Mr. Justice GRIER delivered the opinion of the court.

This case comes before us on a writ of error to the Court of Appeals of Virginia.

The appellants filed their bill in the Superior Court of Chancery for the Richmond Circuit, setting forth that, on the 25th of February, 1834, the General Assembly of Virginia passed an act entitled " An act to incorporate the stockholders of the Richmond, Fredericksburg and Potomac Railroad Company;" That in order to induce persons to embark their capital in a work of great public utility, the legislature pledged itself to the said company, that, in the event of the completion of said road from the city of Richmond to the town of Fredericksburg, within a certain time limited by said act, the General Assembly would not, for the period of thirty years from the completion of said railroad, allow any other railroad to be constructed between those places, or any portion of that distance, the probable effect of which would be to diminish the number of passengers travelling between the one city and the other upon the railroad authorized by said act, or to compel the said company, in order to retain such passengers, to reduce the passage-money; that the stock was afterwards subscribed, the charter issued, and the road constructed, within the time limited by the act; that on the 18th of February, 1836, an act was passed incorporating " The Louisa Railroad Company, for the purpose of constructing a railroad from some point on the line of the Richmond, Fredericksburg and Potomac Railroad, in the neighborhood of Taylorsville, passing by or near Louisa court-house, to a point in the county of Orange, near the eastern base of the south-west mountains, with leave to extend it to the Blue Ridge, or across the same to Harrisonburg; that on the 28th of December, 1838, this railroad was opened from Louisa court-house to the junction with complainants' road. The bill then gives a history of the several contracts made between the two companies for the transportation of the freight and passengers of the Louisa railroad from the junction to Richmond, and of the frequent and protracted disputes and difficulties which arose between the two corporations on the subject of the compensation to be paid to the complainants for such services, the particulars of which it is unnecessary to mention; the result being, that the respondents insisting that the demands made by complainants for this service were exorbitant and oppressive, finally petitioned the legislature for leave to extend their road from the junction to the city of Richmond. That complainants resisted, and protested against the passage

of such an act, as an infringement of the rights guaranteed to them by their act of incorporation. Nevertheless, the legislature on the 23d of March, 1848, passed an act authorizing the respondents to extend their road from the junction to the dock, in the city of Richmond, unless the complainants would comply with certain terms which were deemed reasonable; and there terms being refused by complainants, the respondents commenced the construction of their road to Richmond, and to extend it across the road of complainants at the junction.

The bill insists that the grant of the act of the 27th of March, 1848, to the Louisa Railroad Company, is inconsistent with the previous grant to complainants, and impairs the obligation of the contract made with them; that the lands condemned for their franchise cannot be taken from the complainants for the use of the respondents, and that they have, therefore, no right to build their road across the road of complainants. It prays, therefore, that the respondents may be enjoined: 1st. From entering upon any lands which have been condemned for the use of complainants' road, for the purpose of constructing a railroad across it; 2d. That the respondents may be enjoined from all further proceedings towards the construction of a railroad between the junction and the city of Richmond; and, 3d. That they may be enjoined from " transporting on the railroad so proposed, persons, property, or the mail, and especially from transporting passengers travelling between the city of Richmond and the city of Washington."

The respondents, in their answer, deny " that the act of Assembly which authorizes them to construct their road from its terminus at the city of Richmond, in any manner violates the bill of rights, or Constitution of Virginia, or the Constitution of the United States, or any right guaranteed to the complainants by their act of incorporation. They deny, also, that it is their purpose to invade or violate any right or privileges of the complainants by the manner in which they shall use their road if they are permitted to construct it."

The State court decided: 1st. That the privilege or monopoly guaranteed to the complainants by the 38th section of their act of incorporation, was that of transporting passengers between Richmond and Washington; but that the legislature, by that enactment, did not part with the power to authorize the construction of railroads between Richmond and Fredericksburg for other purposes; that they had, therefore, the right to authorize the extension of respondents' road to the dock in the city of Richmond, and consequently the court refused to enjoin the respondents from constructing their road. 2d. That a grant of a franchise to one company to make a railroad or canal, is not

infringed by authorizing another railroad or canal to be laid across it, on paying such damages as may accrue to the first, in consequence thereof. The injunction for this purpose was therefore refused.

3d. " That if the Louisa Company shall hereafter use their road by transporting passengers in violation of the rights guaranteed to complainants by the 38th section of their charter, the remedy at law seems to be plain, easy, and adequate; if, however, it should, from any cause, prove to be inadequate, it may be proper to interpose by injunction, and that will depend on the facts which may then be made to appear."

The decree having dismissed the complainants bill, was "a final decree or judgment;" and that decree having been affirmed by the Court of Appeals by their refusal to entertain an appeal; and, moreover, the record showing that " there was drawn in question the validity of a statute and authority exercised under the State of Virginia," "on the ground of their being repugnant" to that clause of "the Constitution of the United States" which forbids a State to pass " any law impairing the obligation of contracts;" and " the decision of the court being in favor of their validity," there can be no doubt of the jurisdiction of this court to review the decision of the State court.

For this purpose, it will be necessary to set forth, at length, the 38th section of the act of incorporation of the company complainant, which contains the pledge or contract which their bill claims to have been impaired or infringed by the act of 1848, authorizing the respondents to continue their road from the junction to the dock in Richmond. It is as follows:—

" And whereas the railroad authorized by this act will form a part of the main northern and southern route between the city of Richmond and the city of Washington, and the privilege of transporting passengers on the same, and receiving the passage-money, will, it is believed, be a strong inducement for individuals to subscribe for stock in the company, and the General Assembly considers it just and reasonable that those who embark in the enterprise should not be hereafter deprived of that which forms a chief inducement to the undertaking.

" 38. *Be it therefore enacted and declared, and the General Assembly pledges itself to the said company,* That, in the event of the completion of the said railroad from the city of Richmond to the town of Fredericksburg, within the time limited by this act, the General Assembly will not, for the period of thirty years from the completion of the said railroad, allow any other railroad to be constructed between the city of Richmond and the city of Washington, or for any portion of the said distance, the probable effect of which would be to diminish the number

of passengers travelling between the one city and the other, upon the railroad authorized by this act, or to compel the company, in order to retain such passengers, to reduce the passage-money : *Provided, however,* That nothing herein contained shall be so construed as to prevent the legislature, at any time here-after, from authorizing the construction of a railroad between the city of Richmond and the towns of Tappahannock or Urbana, or to any intermediate points between the said city of Richmond and the said towns: *And provided, also,* That nothing herein contained shall be construed to prevent the General Assembly from chartering any other company or companies to construct a railroad from Fredericksburg to the city of Washington."

Two objections were made by counsel to the validity of this act, on which we do not think it necessary to express an opinion. They are: 1st. That one legislature cannot restrain, control, or bargain away the power of future legislatures, to authorize public improvements for the benefit of the people. 2d. That the grant made by this section is void for uncertainty, being both unintelligible and impracticable, furnishing no standard by which any tribunal can determine when the grant is violated and when not, according to its terms.

For the purposes of the present decision, we shall assume that the legislature of Virginia had full power to make this contract, and that the State is bound by it; and moreover, that the franchise granted is sufficiently defined and practicable for the court to determine its extent and limitations.

It is a settled rule of construction adopted by this court, "that public grants are to be construed strictly."

This act contains the grant of certain privileges by the public, to a private corporation, and in a matter where the public interest is concerned; and the rule of construction in all such cases is now fully established to be this: " That any ambiguity in the terms of the contract must operate against the corporation, and in favor of the public; and the corporation can claim nothing but what is clearly given by the act." See Charles River Bridge v. Warren Bridge, 11 Pet. 544.

Construing this act with these principles in view, where do we find that the legislature have contracted to part with the power of constructing other railroads, even between Richmond and Fredericksburg, for carrying coal or other freight? Much less can they be said to have contracted, that no railroad connected with the western part of the State, shall be suffered to cross the complainants' road, or run parallel to it, in any portion of its route. Such a contract cannot be elicited from the letter or spirit of this section of the act.

On the contrary, the preamble connected with this section

shows that the complainants' road was expected to "form a part of the main northern and southern route between the city of Richmond and the city of Washington;" and the inducement held out to those who should subscribe to its stock, was a monopoly "of transporting passengers" on this route, and this is all that is pledged or guaranteed to them, or intended so to be, by the act. It contains no pledge that the State of Virginia will not allow any other railroad to be constructed between those points, or any portion of the distance for any purpose; but only a road, "the probable effect of which would be to diminish the number of passengers travelling between the one city and the other, upon the railroad authorized by the act," or to compel the company to reduce the passage-money.

That the respondents will not be allowed to carry the passengers travelling between the city of Richmond and the city of Washington, is admitted; and they deny any intention of so exercising their franchise as to interfere with the rights secured to complainants. That the parties will differ widely as to the construction of the grant owing to the ambiguity created by the use of the word "between," as it may affect the transportation of passengers travelling to or from the west, is more than probable. But on this application for an injunction against the construction of respondents' road, the chancellor was not bound to decide the question, by anticipation: And, although he may have thrown out some intimation as to his present opinion on that question, he has very properly left it open for future decision, to be settled by a suit at law, or in equity, "upon the facts of the case as they may then appear." But, however, probable this dispute or contest may be, it is not for this court to anticipate it, and volunteer an opinion in advance.

The act of 1848, authorizing the extension of the complainants' road, is silent as to any grant of power to transport passengers, so as to interfere with the pledge given to complainants; and it is sufficient for the decision of the case before us, to say, that the grant of authority to respondents to extend their road from the junction to the dock at the city of Richmond, does not, *per se*, impair the obligation of the contract contained in the 38th section of complainants' charter. The conditions annexed to the grant to respondents, by which the complainants were enabled to defeat it, cannot affect the question in any way. If the 38th section of the act of incorporation of complainants does not restrain the legislature from constructing another railroad for any purpose, parallel or near to the complainants', the respondents have a right to proceed with the construction of their road, and the State court was justified in refusing the injunction.

The counsel, very properly, have not insisted in their argument

in this court, on this point made in their bill, that the legislature had no power to authorize the construction of one railroad across another. The grant of a franchise is of no higher order, and confers no more sacred title, than a grant of land to an individual; and, when the public necessities require it, the one, as well as the other, may be taken for public purposes on making suitable compensation; nor does such an exercise of the right of eminent domain interfere with the inviolability of contracts. See West River Bridge Company v. Dix, 6 How. 507.

Leaving, therefore, the question, as to the proper construction of the contract or rights guaranteed to the complainants, by this section of their charter, to be settled when a proper case arises, we are of opinion that the State court did not err in refusing to enjoin respondents from constructing their road according to the authority given them by the act of Assembly of 27th March, 1848, and that said act does not impair the obligation of the contract made with the complainants, in the 38th section of their act of incorporation. The judgment of the Court of Appeals of Virginia is therefore affirmed, with costs.

Mr. Justice McLEAN, Mr. Justice WAYNE, and Mr. Justice CURTIS dissented.

Mr. Justice CURTIS.

I have been unable to agree with the majority of the court in this case, and some of the principles on which a decision depends are of so much importance, as affecting legislation, that I think it proper to state my opinion and the reasons on which it rests.

That the 38th section of the complainants' charter contains a contract between the corporation and the State, the obligation of which the latter can not impair by any law, must, I think, be admitted. Whether "An act for the extension of the Louisa Railroad to the dock in the city of Richmond," does impair that obligation, depends upon the interpretation which the contract requires; and, inasmuch as it is the duty of this court to determine whether the obligation of the contract has been impaired, it is necessarily its duty to decide, what is the true interpretation of the contract.

The 38th section, with its preamble, are as follows:

"And whereas the railroad authorized by this act will form a part of the main northern and southern route between the city of Richmond and the city of Washington, and *the privilege of transporting passengers on the same*, and receiving the passage-money, will, it is believed, be a strong inducement to individuals to subscribe for stock in the company, and the General Assembly

considers it just and reasonable that those who embark in the enterprise should not be hereafter *deprived of that* which forms a chief inducement to the undertaking,

"38. *Be it therefore enacted and declared, and the General Assembly pledges itself to the said company,* That in the event of the completion of the said railroad from the city of Richmond to the town of Fredericksburg, within the time limited by this act, the General Assembly will not, for the period of thirty years from the completion of the said railroad, allow any other railroad to be constructed between the city of Richmond and the city of Washington, *or for any portion of the said distance, the probable effect of which would be to diminish the number of passengers travelling between the one city and the other, upon the railroad authorized by this act,* or to compel the company, in order to retain such passengers, to reduce the passage-money : *Provided, however,* That nothing herein contained shall be so construed as to prevent the legislature, at any time hereafter, from authorizing the construction of a railroad between the city of Richmond and the towns of Tappahannock or Urbana, or to any intermediate points between the said city of Richmond and the said towns ; *And provided, also,* That nothing herein contained shall be construed to prevent the General Assembly from chartering any other company or companies to construct a railroad from Fredericksburg to the city of Washington."

The preamble in effect declares what general object the parties have in view, and the section makes known to what extent and by what means that subject is to be accomplished. That general object is to secure the corporation from being deprived of the passenger travel on its railroad; and the means of prevention are, to prohibit for thirty years the existence of any other road, the probable effect of which would be to diminish the number of passengers travelling between Washington and Richmond upon the railroad of the complainants.

The first question is, whether what is called the extension of the Louisa road, is a railroad, the probable effect of which would be to diminish those passengers; and this depends on what passengers are referred to in the contract.

It is maintained by the appellees that only passengers travelling the distance between Washington and Richmond are intended; but this is not consistent either with the substantial object of the parties, or with the language they have employed to make known their agreement. "The privilege of transporting passengers *on the same* and receiving the passage-money," and protection from being "deprived of *that* which forms the chief inducement of the undertaking," would be but imperfectly secured, if limited to one particular class of passengers only. Such a limit-

ation.inconsistent with the apparent object of the parties is not to be engrafted on the contract unless clearly expressed. It is said that the words " passengers travelling between the one city and the other," contain this limitation, their meaning being passengers travelling from one city to the other. The word " between" in this clause admits of that interpretation, but does not require it. That word may also designate any part of the intermediate space, as well as the whole. It may be correctly said that the complainants' railroad is between Richmond and Washington, though it does not traverse the whole distance from one of those cities to the other, and the words which immediately follow, certainly tend strongly to show that it was in this last and more comprehensive sense the word " between" was here used. The whole clause is, " passengers travelling between one city and the other, *upon the railroad authorized by this act.*" But the railroad there referred to, upon the completion of which this contract was to take effect, was only to be from Richmond to Fredericksburg, so that, strictly speaking, passengers could not travel to or from the city of Washington upon the railroad authorized by the act; they could thus pass over only a part of the intermediate space between Washington and Richmond. This clause therefore does not control the evident general intent of the parties to protect the passenger travel, but rather tends to make that general intent more clear. The question being whether the travellers referred to are only those going the whole distance, and one part of the descriptive words, designating where they are travelling, being ambiguous, and the other part which points out how they are travelling, being clear, the result of the whole is to include all who travel in the intermediate space between the two cities, upon the complainants' railroad. And this construction is still further strengthened by the stipulation that the State will not authorize another road " to be constructed between the city of Washington and the city of Richmond, *or for any portion of the said distance;*" for if the object of parties was merely to protect the enjoyment by the complainants of the tolls derivable from passengers going from one of those cities to the other, it is highly improbable that the State would have agreed to this broad restriction. Construing the preamble and the section together, I think it was the intention of the parties to secure to the complainants, for the period of thirty years, the exclusive enjoyment of all the railroad passenger travel over every part of the line between Washington and Richmond; and that the mode of security agreed on by the parties was, that the State should not authorize the construction of any such railroad as might probably interfere with that exclusive enjoyment.

In coming to this conclusion I have not overlooked the rule, that grants from States to corporations of such exclusive privileges, are to be construed most strongly against the grantees. But this rule, like its converse, *fortius contrà proferentem*, which applies to private grants, is the last to be resorted to, and never to be relied upon, but when all other rules of exposition fail. Bac. Max. reg. 3; 2 Bl. Com. 380; Love *v.* Pares, 13 East, 86. In Hindekoper's Lessee *v.* Douglass, 3 Cranch. 70, Chief Justice Marshall says: " This is a contract; and although a State is a party it ought to be construed according to those well established principles which regulate contracts generally." A grant such as is now in question, in consideration of the grantees risking their capital in an untried enterprise, which, if successful will greatly promote the public good, in no proper sense confers a monopoly. It enables the grantees to enjoy, for a limited time, what they may justly be considered as creating. It is in substance and reality, as well as in legal effect, a contract, and in my judgment it is the duty of the court to give it such a construction as will carry it into full effect; imposing on the public no restriction, and no burden, not stipulated for, and depriving the company of no advantage, which the contract, fairly construed, gives. This is required by good faith; and to its demands all technical rules, designed to help the mind to correct conclusions, must yield. Having come to the conclusion that the intention of the parties to this contract was to secure to the complainants exclusive enjoyment of all railroad passenger travel over every part of the distance between Richmond and Washington for thirty years, and that the means adopted to effect this object was the promise of the State to authorize the construction of no railroad which might probably interfere with that exclusive enjoyment, the next inquiry is, whether the extension of the Louisa Railroad to the dock in the city of Richmond would probably have that effect. This act enables the Louisa Railroad Company to extend their road, from its junction with the complainants' road, at a point about twenty-four miles from Richmond, to that city, and thus to make another railroad between Richmond and that point on the complainants' road.

That this authority comes within that part of the restrictive stipulation, which describes the route over which another railroad is not to be built, is clear; for it does authorize " another railroad," " for a portion of the distance " " between the cities of Richmond and Washington." But it is said that it does not come within the residue of the restrictive clause, because its probable effect will not be to diminish that passenger travel designed to be secured to the complainants. To this I cannot assent. The Louisa Company, by their original charter, are

The Richmond, &c. Railroad Co. *v.* The Louisa Railroad Co.

expressly authorized to carry passengers on their railroad, and when they are empowered by the act now in question to extend their road, it is a necessary implication that the extension is for the same uses, and subject to the same rights, and powers, and privileges as the original road, to which it is to be annexed. And accordingly we find, that by the 5th section of this act, the legislature has prescribed a limit of tolls, as well for passengers as for merchandise, coming from or going to another railroad and passing over the whole length of the Louisa road and each part of it, including the extension.

Passengers using the complainants' road between Richmond and the junction, may be divided into three classes. Those who travel the whole, or a part of the distance between Richmond and the junction, and do not go beyond the junction; those who do go to, or come from points beyond the junction on the complainants' road; and those who travel on the Louisa road, beyond the junction, going west, or coming east. The extension of the Louisa road is adapted to carry all these, and by the act complained of, the Louisa Company is authorized to construct a road to carry them. It may certainly be assumed, that a corporation, created to conduct a particular business for profit, will do all such business as it is its clear interest, and within its authority to do, and which it was created for the very purpose of doing. And if so, the effect of this extension must be, to transport thereon a part of all these classes of passengers, and thus to diminish the number of those same classes of passengers, who, at the time of the passage of the act in question, used the complainants' road.

As to those passengers who do not use the Louisa road beyond the junction, I am at a loss to perceive any reason why they are not within the description of passenger travel designed to be secured to the complainants; and if they are excluded therefrom, I know of none who would be included, unless upon the interpretation already considered and rejected, that the contract was designed to embrace only passengers travelling the entire distance between Richmond and Washington. It is not absolutely necessary to go any further to find that this extension act impairs the obligation of the contract, by authorizing another road to be built, the probable effect of which would be, to diminish the number of passengers travelling on the complainants' road between the junction and Richmond. But it is clear to my mind, that the third class of passengers using the Louisa road, are as much within this contract as any others. To explain my views on this point, it is necessary to refer to a few dates.

The complainants were incorporated in February, 1834, and their act of incorporation contained the compact now

relied on. Their road was completed and opened for use in January, 1837. In February, 1836, an act was passed incorporating the stockholders of the Louisa Railroad Company. In December, 1838, the Louisa road was opened for use to the Louisa court-house, and from that time to March, 1848, the passengers using the Louisa road, going to or coming from Richmond, and points between that city and the junction, passed over the road of the complainants. In March, 1848, the complainants and the Louisa Company having differed concerning the tolls to be charged by the former on passengers and merchandise going to or coming from the Louisa road, the legislature passed the "Act for the extension of the Louisa Railroad," which contains the following section : — "Be it further enacted, that in case the Richmond, Fredericksburg, and Potomac Railroad Company shall, at the next annual meeting of the stockholders, stipulate and agree, from and after the expiration of the present contract with the Louisa Railroad Company, to carry all passengers and freight coming from the Louisa Railroad from the junction to the city of Richmond, at the same rate per mile as may at the same time be charged by the Louisa Railroad Company on the same passengers and freight; and shall also agree to carry all passengers and freight entered at the city of Richmond for any point on the Louisa Railroad, at the same rate per mile as is charged at the time for the same, by the Louisa Railroad Company; and shall also agree to submit to the umpirage of some third person or persons, to be chosen by the said companies, the compensation to the Richmond, Fredericksburg, and Potomac Railroad Company for collecting at the depots in Richmond the dues of the Louisa Railroad Company, and any other matters of controversy which may arise between the said companies owing to the connection between them, then this act to be void, or else to remain in full force." It will thus be seen that the passenger travel, which it is the object of this act to take away from the complainants' road, had been *de facto* a part of its passenger travel between Richmond and the junction for about ten years. It is maintained that as the Louisa Railroad, from the junction westward, was the cause of the existence of this travel upon the complainant's road, between Richmond and the junction, the Louisa corporation might be empowered to construct another road between those points for the purpose of doing that business. In other words, that passenger travel actually existing on the complainant's road, may properly be diminished by the construction of another road for a part of the distance between Richmond and Washington, provided it be done by a party who at some prior time was instrumental in increasing the passenger travel;

that we are to inquire whether by this new and competing road any more is to be taken away than was brought by the corporation which builds it, and if not, then the competing road does not diminish the number of passengers, travelling on the complainants' road, within the fair meaning of this contract. I can not give to this contract such a construction. It seems to me to be at variance with its express terms and with what must have been within the contemplation of the parties when it was entered into. The promise not to authorize any other railroad between Washington and Richmond, or for any part of that distance, the probable effect of which would be to diminish the number of passengers travelling on the complainants' railroad is absolute and unqualified. It contains no reservation in favor of parties who have been instrumental in bringing that travel to the complainants' road. It extends over the period of thirty years, and applies to the travel actually existing thereon during every part of that period, to whatever causes its existence there may be attributable. It must have been contemplated by the parties that the number of travellers on the complainants' road would increase during the long period of thirty years; it must have been known to them that this increase would be likely to arise, among other causes, from the increased number of passengers coming laterally to the line, in consequence of the construction of other railroads, as well as from increased facilities of access by other means. They enter into a contract which by its terms protects this increased travel during the whole period, and by whatever causes produced, just as much as it protects the travel existing during the first month after the opening of the road. How then can we engraft upon the contract an exception not found there, and say, that when it speaks generally of passengers travelling upon the road, it does not mean passengers which another railroad corporation has brought there? I am unable to see why not, as much as if a steamboat or stage company had brought them. In my opinion this class of passengers on the complainants' road, are as truly within the contract as any others; and a railroad, the object of which is to take away this class of passengers from the complainants' road, is one which the State has promised it would not authorize to be built.

Parties may agree, not only on the substantial rights to be protected, but on the particular mode of protecting them; and if they do agree on a particular mode, it becomes a part of their contract, which each party have a just right to have executed. In this compact the parties have agreed on the mode of protection. It is that the State will not authorize to be built any other railroad, which would probably have the effect to diminish the

8*

number of passengers on the complainants' road. It is the right to construct, and not the right to use which the contract restrains. To say that the State may properly authorize a road to be built, the purpose of which is to carry passengers, and thus diminish the number of passengers on the complainants' road, but that the road thus authorized must not be used to the injury of the complainants' rights, is to strike out of the contract the stipulation that such a road should not be authorized to be built. The power of the State to enable a corporation to build another road to carry merchandise only, seems to me to have nothing to do with this question. When the legislature shall adjudge that the public convenience requires another railroad there, to carry merchandise only, and that therefore the power of eminent domain may be exercised to build it, and when a company is found ready to accept such a charter, and risk their funds in its construction, then a case will arise under the power of the legislature to authorize a road for the transportion of merchandise only. But in the law now in question the legislature has not so adjudged; no such charter has been granted, or accepted, and no such road built; but one which the State is by its own promise restrained from authorizing. It seems quite aside from the true inquiry, therefore, to urge that the State might have empowered a company to make a railroad on which to transport merchandise only; for it has not done so.

It has been suggested by one of the defendants' counsel, that though the power of the legislature to enter into a compact for some exclusive privileges is not denied, yet that the legislature had not power to grant such privileges as are here claimed by the complainants, and therefore the State is not bound thereby. This is rested not upon any express restriction on the powers of the legislature, contained in the Constitution of Virginia, but upon limitations resulting by necessary implication from the nature of the delegated power confided by the people of that State to their government. But if, as must be, and is admitted, it is one of the powers incident to a sovereign State to make grants of rights, corporeal and incorporeal, for the promotion of the public good, it necessarily follows that the legislature must judge how extensive the public good requires those rights to be. Whether the State shall grant one acre of land, or one thousand acres; whether it shall stipulate for the enjoyment of an incorporeal right, in fee for life or years; whether that incorporeal right shall extend to one, or more subjects; and what shall be deemed a fit consideration for the grant in either case, is intrusted to the discretion of the legislative power, when that discretion is not restrained by the constitution under which it acts. This has been the interpretation by all courts, and the practice under all

constitutions in the country so far as I know, and it seems to me to be correct. See Piscataqua Bridge, v. New Hamp. Bridge, 7 N. H. Rep. 35, and cases there cited; Enfield Bridge, v. The Hart. & N. H. R. R. Co., 17 Conn. R. 40; Washington Bridge v. State, 18 Conn. R. 53.

It remains to consider whether this court has jurisdiction to reverse the decision of the State court.

The Court of Appeals having refused to entertain an appeal, the superior Court of Chancery of the Richmond Circuit, was the highest court of the State, to which the complainants could carry the case; and it is to the decision of that court we must look. The questions are whether that court erroneously decided against a right claimed by the complainants under the Constitution of the United States, and whether the bill was dismissed by reason of that erroneous decision. The points decided are set out with great clearness upon the face of the decree. Their substance is, that the construction of this extension road is lawful, the legislature having power to authorize it; that it may lawfully be used for the transportation of passengers, who, but for the existence of the Louisa road would never have come on to the line of the Fredericksburg road; that whether the Louisa Company will use the extension for the transportation of any other passengers, and thus infringe complainants' rights, does not appear; when the supposed case shall occur, it may be proper to interfere by injunction, if, upon the facts of that case as they shall appear, there is not a plain, adequate, and complete remedy at law.

It is clear, then, that the Chancellor decided, against the right claimed by the complainants, under the Constitution, that this extension should not be constructed. In my opinion, this decision was erroneous. It is clear, also, that he decided against their right, under the Constitution, to be protected in the enjoyment of the passenger travel coming upon their road, in consequence of the existence of the Louisa road. I think this was also erroneous. By reason of these decisions the bill was dismissed. They left nothing but a case of contingent damage, which would not happen at all, if the Louisa Company should carry only the passengers coming upon the line of the complainants' railroad by reason of the existence of the Louisa road; there was no certainty to what extent, or under which circumstances, or whether at all, the complainants' rights would be infringed.

Upon these views of the contract of the State, and the rights of the complainants, it necessarily followed that the bill was to be dismissed; for equity would not interfere in a case where the defendants had valuable rights and powers, which they might not

exceed, and which they ought not to be restrained from exercising. But on the other hand if the defendants had no such rights, or powers; if they were claiming them and about to exercise them, in a manner certain to inflict great and continuing injury on the complainants, the extent of which injury a court of law could not fully ascertain, and could redress, even partially, only by a great multiplicity of suits, then no court of chancery would hesitate to grant relief. It is certain therefore that this bill was dismissed, by reason of, what I consider, the erroneous views taken by the chancellor, of the rights claimed by the complainant under the Constitution of the United States.

It has been argued that by the local law of Virginia, contained in the general railroad act of that State, the chancellor had not jurisdiction to grant an injunction to restrain the construction of the extension road. If the chancellor had so decided and dismissed the bill, for that reason this court could not reverse that decision. But he did not so decide; and I cannot infer that he would so decide if this case were to be remanded, because I am of opinion that the statute relied on has no application to this case.

My opinion is that the decree of the Superior Court of Chancery should be reversed and the case remanded, with such directions as would secure to the complainants the remedy to which they are entitled, to prevent the violation of rights, secured to them by the Constitution of the United States.

### *Order.*

This cause came on to be heard on the transcript of the record from the Court of Appeals of the Commonwealth of Virginia, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that the decree of the said Court of Appeals in this cause be, and the same is hereby affirmed with costs.