Marston, J.:
This case was heard upon pleadings and proofs and a decree rendered perpetually enjoining defendant from entering upon complainant’s property for the purpose of constructing a branch or spur track “without the consent of the complainant first had and obtained, or, without first obtaining a condemnation therefor, for the public use, and making compensation therefor, agreeable to the provisions of law.” From this decree defendant, conceiving itself aggrieved, appealed.
*254 The defendant only having appealed, and having, in the argument submitted, claimed a right to take the land as being already appropriated to public uses, it becomes unnecessary to consider some of the very interesting questions submitted by counsel for complainant in their brief, as to whether this proposed spur track would be merely for *the private use and benefit of defendant and not of the public, and if for private use only, whether the lands of complainant could be condemned under the circumstances existing in this case. We shall therefore confine ourselves in what we may here say to the position submitted by counsel for appellant in their brief.
The appellant insists that under Sec. 36 of the Laws of 1878, p. 526, it has a right to build this spur track, and that after the crossing shall have been made, if the companies cannot agree as to the compensation to be made by the company crossing, the same shall be ascertained by like proceedings and in like manner as is provided for taking of land or other property. It is also insisted that this statute is valid and not in conflict with any constitutional provision; that the constitution of Michigan (§ 1, Art. 15) provides that “corporations may be formed under general laws,” and that “all laws passed pursuant to this section maybe amended, altered or repealed;” that the general railroad law under which these companies were organized was passed under and by virtue of the power conferred by this section of the constitution, and that the act subjected the companies to certain liabilities and restriction^; among others, the right to construct their road across any stream, private road, highway, railroad or canal, and to cross or intersect any other railroad then or thereafter to be constructed; that while the same statute gave to railroad companies formed under it the power to purchase, receive, hold and use lands and real estate for the purpose of constructing and maintaining its road, it granted the power for a public use and not a private one, and subject to the reserved legislative power granted in the constitution, which enabled the legislature to alter, amend or repeal its charter at pleasure, and that it would be absurd to say, after a railroad has taken *255 ■property for a public use, it immediately becomes private property, and is beyond the reserved power of the legislature; and that when another ■ railroad company attempts *to cross it, the latter company is appropriating >private property for public use.
Such in brief is the argument of counsel for the appellant upon this branch of the case.
In so far as we can discover, this is the first time that such a position has been taken on behalf of a corporation. Heretofore when this question has arisen, it has been insisted that the legislature could not authorize the property or franchises of a corporation to bo taken under the exercise of the right of eminent domain. It was then argued by the corporations that their property and rights were of so sacred and intangible a character that they could not be disturbed, although similar rights in the person of the citizen could be. The courts, however, uniformly held that in this respect there was no difference between corporate and individual rights; that a grant for one public purpose must yield to another equally important, but that in all such cases compensation should be made to those whose property or franchises was thus required and taken for the public use.
We consider the argument advanced in this case a very dangerous one for railroad companies to endeavor to enforce. If carried out to its legitimate and logical conclusion, it would, in effect, enable the legislature to take, or authorize to be taken from them, all property they might' have acquired by •condemnation, and authorize its use for other so-called public purposes, without making any compensation whatever therefor. The company might thus be practically destroyed and its rights given to another or parceled out. Some other very absurd results would follow, but we need not here refer to them.
How, without attempting at present to define the power of the legislature, under the clause of the constitution referred to, it has never yet been claimed that the legislature under this reserved right could take the property which the corporation had acquired, by purchase or otherwise, and give it to *256 third parties, or authorize its being appropriated by or *for the use of the public, without compensation being made therefor. A repeal of the law under which the corporation was organized would not vest the title to its property in the public. In so far as the corporation is a common carrier, the legislature has undoubted power to control and to regulate it, but in so far as its property is concerned, property taken by it for use in the building and operating its road, so long at least as such property is used by the corporation for such purposes, is as sacredly guarded and protected under our constitution, and is as much beyond the reach or power of the legislature, as is the property of an individual. Whatever the right or title of the corporation may be in such lands, whether a mere easement or something greater, whether it may by some be considered public property and by others private, call it by what name we will, practically, in order for the company to fully enjoy its rights therein, the use must not only be permanent in its nature, at least so long as the road is operated, but it must be exclusive. From the very nature of the construction and operation of railroads, the public cannot use their road in the usual or ordinary manner of using a common public highway. Neither the state nor any of its-departments, or municipalities, have or claim any interest in the property or franchises of the company. They neither pay nor contribute towards the purchase of the right of way, or to keeping it in proper repair afterwards. All this is done by the company itself and through its efforts. And the right thus acquired and paid for by the company is as much its property, and of value to it, as would be a like right or interest if owned by an individual. In justice, therefore, the corporation should have as clear a right to compensation for an injury sustained, in consequence of an appropriation or use of its property by another without its consent, as an individual would.
The theory that land taken under the power of eminent domain is taken for the public use, has really caused much *mischief. The term public use or public purpose is misleading. An object may be public for one *257 purpose while for others it would not be. . Corporations have frequently, in order to accomplish their purposes, sought to give this term its broadest meaning, and then, using it as a foundation, to erect structures thereon, wholly at variance with all well known legal principles. In this they have derived encouragement and support from the courts in holding that property thus taken and held by a private corporation is taken for a public purpose, in order to find some ground upon which to authorize its being taken in inmtum.
Now, while railroads in one sense are for the use and accommodation of the public, and to this extent may be considered as used for public purposes, the mistake in this case consists in assuming that the property by them acquired, having been taken for a public purpose, may be used and appropriated by any other corporation for a siWilar public purpose, without making compensation therefor; that property public for one purpose shall be public for all. But is this true ? In the case of a common public highway every one has an equal right of passage over it, but if it is sought to appropriate it to some essentially different public use, as a railroad, it is now generally conceded that the owner of the soil would be entitled to additional compensation. A turnpike is also a public highway, which the public have a right to use upon paying toll. If it is appropriated to some other public use, the turnpike company would be' entitled to compensation, and if the new use was essentially different from the old, the owner of the reversion would also be entitled to compensation. In the one case the public have the right to the free use of the road, in the other, to the use upon paying toll; but in neither event are their rights considered in case of the road being appropriated to a different purpose.
If lands are taken for a site for a light-house or a fort, although clearly taken for public purposes, yet the • the public as *such are excluded therefrom. The use for which it is designed is one that is inconsistent with individual rights, either separate or collectively. In some cases where property is required for public use a mere temporary use or easement only is required, while in others an *258 apparently perpetual and exclusive occupation is required. In the former class, whenever the public easement is relinquished or vacated, the owner of the reversion is restored to his original rights, while in the latter class it would not follow that he would have any rights whatever upon a relinquishment of the uses for which the property was acquired. It is apparent, therefore, that it will not do to say that property taken for a particular public use thereby becomes public for all purposes. The public may have the right to use it for certain purposes, •■and yet individuals or private corporations have rights therein .at the same time. These rights may be considered as private rights, separate and distinct from the rights of the public. "Wherever such private rights exist, they are entitled to protection, and can only be divested in the same manner and under the same laws that individual rights may be.
Our conclusion upon this branch of the case is, that the franchises or property of one railroad may be taken for the construction of another, in all cases where the property of an individual might be, upon making compensation therefor.
We refer to the following authorities, and while perhaps none of the cases cited cover the entire ground here gone over, yet we think they fully support the views taken. — Cooley’s Const. Lim., 523 et seq.; 1 Redfield on Railways, 229 et seq.; West River Bridge Co. v. Dix, 6 How., 529; Richmond, etc., R. R. Co. v. Louisa R. R. Co., 13 How., 81; Newcastle, etc., R. R. v. P. & I. R. R., 3 Ind., 464; Springfield v. Conn. R. R., 4 Cush., 63; Northern R. R. v. Concord, etc., R. R., 7 Fost., 183; The Peoria, etc., R. R. v. The Peoria & Springfield R. R., 66 Ill., 174; Enfield Toll Bridge Co. v. Hartford, etc., R. R., 17 Conn., 40; Matter of Kerr, 42 Barb., 119; Boston Water Power * Co. v. Boston, etc., R. R., 23 Pick., 360; Central Bridge Co. v. Lowell, 4 Gray, 482; The People v. Salem, 20 Mich., 452; Bench and Bar, July, 1871, p. 97.
It follows that the decree must be affirmed, with costs.
The other justices concurred.