NORTHERN PAC. R. Co. *v.* B. & M. R. Co. and others

(*Circuit Court, D. Minnesota.* ———, 1880.)

1. INJUNCTION—ATTEMPT TO TAKE PERMANENT POSSESSION OF LAND FOR PUBLIC USE—IRREPARABLE INJURY.—An attempt to take permanent possession of land for public use, without the assent of the owner, express or implied, and without payment or tender of damages in advance, would, if consummated, be in the nature of an irreparable injury, to prevent which an injunction would ordinarily be granted.

*Held*, in this case, that the equities of the bill were not fully denied by the answer, and a motion to dissolve the injunction could not therefore prevail.

Motion to dissolve preliminary injunction.

*Gilman & Clough,* for plaintiff.

*Bigelow, Flandrau & Clark,* for defendants.

NELSON, D. J.   It is well settled that the attempt to take permanent possession of land for public use, without the assent of the owner, express or implied, and without payment or tender of damages in advance, would, if consummated, be in the nature of an irreparable injury, to prevent which an injunction will ordinarily be granted.   See High on Injunctions, § 391; 30 Wis. 107; 2 Dillon, 376.

The answer of defendants does not deny that such attempt was made, and the allegations of the bill in that respect are not fully met, so as to warrant the enforcement of the general rule, that when all the equities of the bill are fully denied by the answer the injunction must fall.

The charter of the Northern Pacific Railroad Company (section 7) authorizes the company to enter upon any land necessary for the construction and working of its road, not to exceed 200 feet in width on each side of the line; and in case the owner of the land and the company cannot agree as to the value of the premises taken, provision is made for an appraisal to be initiated by *either party.*   Usually the railroad company only is authorized to commence proceedings.   When the company, under such a charter, takes possession of land for construction before proceedings are commenced to ascertain the compensation to be paid, it is not a trespasser, and an injunction even would not be allowed to prevent the construction of its road.   Mills on Eminent Domain, § 90, and authorities cited.   This rule, however, would not prevail where the right of eminent domain is granted to corporations by the legislature of a state whose constitution requires compensation to be first paid or secured before the property is taken.

The right of eminent domain is conferred upon the plaintiff by congress under the constitution of the United States.   The state of Minnesota assented to the right to so exercise it.   See act of Minnesota legislature of March 2, 1865.

Under the constitution of the United States just compensation, where private property is taken for public use, is not

in terms required to be made before entry. Authorities are numerous that the party condemning may thus enter even where no right is given by the charter to the owner to initiate proceedings for assessment of damages.

But I think the facts in this case, aside from the law as laid down, show a waiver of payment in advance of the entry and construction of the road by Edward Schriber, the owner, and his heirs. The route of the Northern Pacific Railroad Company was finally located over the *locus in quo* November 21, 1871. Edward Schriber purchased it in the month of January previous from the government. The railroad was constructed in the summer of 1872. There was no person living upon the premises at the time, and it was uncultivated. The land being vacant at the time of entry by the plaintiff, on the definite location of the route, and the owner residing in the state of Pennsylvania, would not the clause in the company's charter, which authorizes it to enter upon vacant and unoccupied land, justify the entry? But conceding it would not, yet, when the entry was made, and the road in operation, an acquiescence for the shortest period is sufficient to warrant a belief that the owner intends to waive all claims except, perhaps, for the damages, which could be assessed as well after as before entry. Certainly the earliest notification to the company, according to the averments of the answer, was long after the construction by the plaintiff of its road over the land, and, though it is alleged in the answer that neither Edward Schriber in his life-time, nor his heirs, knew until 1873 that the plaintiff had constructed its road over this land, still, up to the time of the conveyance of their interest in the strip which crosses the Northern Pacific Railroad, in 1880, they only notified the plaintiff that they held it responsible for the trespass and use of the land, and have never commenced any proceedings to assert their rights.

The plaintiff has been in possession of the land since November, 1871, and operating its road since 1872. Under such circumstances a license is implied.

It is conceded by defendants' counsel that the Barnesville & Moorhead Railroad Company, as owner of a strip purchased

from Schriber's heirs, running across complainant's track, and the land necessary for operating its road, could not maintain ejectment. If the company is not a trespasser, and cannot be ousted by ejectment, and an injunction would not issue, it has a right of property as well as a license. Its title would be complete and perfect on the payment of compensation when ascertained.

The plaintiff insists that the right to compensation is barred under section 7 of its charter, through default of Schriber or his heirs to claim such compensation within six years after the opening of its road, and authorities are not wanting to sustain this view, (1 Redfield on Railways, 300, and note;) but it is not necessary to decide this now. Conceding the right to enforce a claim for compensation, the plaintiff still has a property interest which can only be taken by the defendants deriving title with knowledge of the situation, on strict compliance with the law of Minnesota. The law does not authorize either party to initiate proceedings to condemn; it allows only the one desiring the land.

No award has been made—no compensation ascertained. Unless consent or license was given to defendants to enter upon the plaintiff's right of way and track, and construct the crossing, in view of the constitution and laws of Minnesota by virtue of which only can it exercise the right, damages must first be appraised and paid or secured previous to entry. See Cooley's Constitutional Limitations, title, "Eminent Domain;" 30 Wis. 105; 35 Mich. 265,—the latter a railway-crossing case.

No damages having been appraised, has permission or license been granted so as to prevent the plaintiff from resisting the occupancy of its land and track for that purpose?

The amended answer of defendants sets up a license to make a crossing over plaintiff's track, given by it, and alleges that the plaintiff, also, by representations encouraged the building of defendants' road, and gave it to understand that it would assist in effecting the crossing, and interpose no objections thereto. The answer is sworn to by R. B. Angus, James J. Hill, and A. B. Stickney; and an affidavit

sworn to by R. B. Angus, which was read on the hearing of the original application for injunction, purports to give in some detail what these representations were, and he says H. E. Sargent, the plaintiff's general manager, knew that the defendants intended to cross plaintiff's line, and made no objection to the manner or the point at which said crossing was to be made, but at his own request was furnished by the defendants' chief engineer with a description of said proposed crossing, and a diagram and model of a frog which would be required at said point, and that said Sargent then agreed and promised to construct said frog at the shops of said plaintiff at Brainerd, in this state.

The affidavits of the president and secretary of the company, and of the general manager, denying any consent to the intended crossing, are read in reply, and a copy of a letter written by one of the defendants, Stickney, superintendent of construction of the Barnesville & Moorhead Railroad, dated September 3, 1880, and addressed to H. E. Sargent, general manager of the Northern Pacific Railroad, is also produced, purporting to enclose a tracing of the proposed crossing, with a request that the crossing frogs should be made at the plaintiff's shops and charged to the Barnesville & Moorhead Railroad Company; also a copy of a letter, dated September 9, 1880, addressed to J. J. Hill, general manager of the St. Paul, Minneapolis & Manitoba Railway, and one of the principal officers of the Barnesville & Moorhead Railroad Company, by Sargent, stating that in the matter of the Barnesville & Moorhead line crossing the Northern Pacific near Moorhead, "I am directed to forbid your doing so, or entering the Northern Pacific Railroad Company's right of way, which is a strip 200 feet wide on each side of the main track."

This was certainly a formal revocation of any parol license to enter upon the Northern Pacific track or right of way, conceding that consent or license was given, which is very doubtful. Again, the power of the general manager of the Northern Pacific Railroad to bind the company in a matter of this kind is not clear, but if he could grant such license, as is claimed by defendants, still the law is well settled that a

parol license can be revoked before acted upon, which is the case here. Bigelow on Estoppel, 227–8; 28 N. Y. 297; 1 Selden, 568.

I am satisfied upon consideration of the case, after the full and able argument of counsel on both sides, that the motion to dissolve the injunction must be denied, and it is so ordered.