STATE ex rel. BOARD. OF COMMISSIONERS OF EVERGLADES DRAINAGE DISTRICT v. DAVID SHOLTZ, as Governor, et al.

150 So. 878.
Opinion Filed Nov. 16, 1933.

*Evans, Mershon & Sawyer, Carter & Yonge* and *Bedell & Bedell,* for Relator;

*Cary D. Landis,* Attorney General, *H. E. Carter, Robert J. Pleus* and *Marvin C. McIntosh,* Assistants, for Respondents.

BIRD, Circuit Judge.—This is an original proceeding in mandamus brought in this Court by relator to compel the respondents to accept the tender of a certificate of the Everglades Drainage District for the unpaid drainage taxes on privately owned land within said District and to pay for the same together with subsequent taxes thereon, from money derived from the use or sales of swamp and overflowed lands held by respondent trustees under the trusts declared in Chapter 610, Laws of Florida, and Acts amendatory and supplementary to Chapter 610, Acts of 1855. Respondents have filed a motion to quash the alternative writ of mandamus issued herein and the sole question presented is whether the respondents, Trustees of the Internal Improvement Fund, are required to accept and pay for tax certificates issued by thhe tax collectors and bid off by tax collectors to them, under the provisions of Chapter 7305, Acts of 1917, brought forward in Compiled General Laws of Florida, 1927, as Section 1541, and in making such payments to use money derived from the use or sales of swamp and overflowed lands held by the respondent trustees under Chapter 610, Laws of 1855, and Acts amendatory and supplementary thereto.

The present Everglades Drainage District was established by Chapter 6456, Acts of 1913, comprising a vast area of approximately four million acres. Much legislation has since been enacted and the boundaries of the District have been altered by succeeding Acts of the Legislature. A full and comprehensive legislative history of the District has been prepared and is now available to the Bench and Bar, by Mr. Justice WHITFIELD of this Court, and will be found

in Martin v. Dade Muck Land Co., 95 Fla. 530; 116 So. 449; and an elaborate history and discussion of the District and its legislation will also be found in the opinion of Judge Strum, Federal District Judge, in Rorick v. Board of Commissioners of the Everglades Drainage District, 57 Fed. 2nd. Series, 1048; and it will serve no useful purpose for us to again review the legislation upon this subject other than as it applies to the particular question here involved.

When the District was created in 1913, under Chapter 6456, Acts of 1913, the Governor, the Comptroller, the State Treasurer, the Attorney General, Commissioner of Agriculture, and their successors in office, were constituted the governing board of the District, and designated as the Board of Commissioners of the Everglades Drainage District. These officers constituted the Board of Commissioners of the Everglades Drainage District until 1931, when the personnel of the Board was changed by Section 2 of Chapter 14,717, Acts of 1931, and the Board of Commissioners was then composed of five persons appointed by the Governor who were required to be citizens of the State of Florida, and land owners within the Everglades Drainage District and bona fide residents of counties lying wholly or in part within the District.

Under the provisions of Section 5 of Chapter 6456, Acts of 1913, it is provided:

"The lands within said District held by the Trustees of the Internal Improvement Fund shall be subject to the taxes hereby imposed and the said Trustees in furtherance of the trusts upon which the said lands are held are hereby authorized and empowered to pay the same out of the funds in their possession derived from the sale of lands or otherwihe."

This Section was carried in identical language through

the subsequent enactments of the Legislature until 1927, when in Section 2, Chapter 12,017, a maintenance and ad valorem tax was provided and the Section, with the addition re-enacted, now constitutes a part of Section 1534, Compiled General Laws of Florida, 1927.

At the time of the original enactment, Section 5, Chapter 6456, Acts of 1913, the Trustees of the Internal Improvement Fund held no land other than that held as agents for the State, in pursuance of the trust imposed upon them, under Chapter 610, Acts of 1885, Section 1384, *et seq.*, Section 1401 to 1408, Compiled General Laws of Florida, 1927. This is indicative of the legislative intent that the word "held" as used in said Section and subsequent enactments, applied only to lands held by the Trustees as agents of the State and did not and does not apply to certificated lands subsequently acquired and held by them.

Section 12 of the original Act, Chapter 6456, Acts of 1913, provided that when there were bidders at the Tax Sale, the lands should be "struck off" by the tax collectors to the person who would pay the taxes, costs and charges, for the least portion of the land, and provided that when there were no bidders (for privately owned lands) the whole tract should be "bid off" by the tax collectors for the Board of Commissioners of the Everglades Drainage District, and that the title should immediately vest in the said Board without the issuance of the tax deed, and provided that the lands should not be sold by the Board for less than the amount of drainage taxes, signifying the intention of the Legislature that the lands should be held in trust by the Board for the payment of the drainage tax.

In Section 12, Chapter 7305, Acts of 1917, it was provided that if there were no bidders for the land, the land should be "bid off" by the tax collectors for the Trustees

of the Internal Improvement Fund, thus changing the depository or holders of the certificates and the certificated lands from the Board of Commissioners of the Everglades Drainage District to the Trustees of the Internal Improvement Fund and Section 16 of Chapter 7305, Acts of 1917, retains the provision that when the unredeemed land is sold, "the proceeds from the sale of such land shall be applied by said Trustees to the payment of the drainage taxes and assessments and other obligations of the Trustees," thus evidencing the legislative intent that the lands should be held by the Trustees as certificated lands for the benefit of the Board of Commissioners of the Everglades Drainage District and not in their own rights, and should not be paid for until such lands were sold, at which time and not until then the proceeds should be applied to the payment of the drainage taxes and assessments.

Section 13, Chapter 6456, Acts of 1913, now Section 1542, Compiled General Laws of Florida, 1927, provides for the immediate payment by persons to whom any parcel of land may be "struck off" and clearly has no application to the Trustees of the Internal Improvement Fund.

Section 8, Chapter 6456, Acts of 1913, now embraced in Section 1537, Compiled General Laws of Florida, 1927, provides "except as herein specifically provided, all laws relating to State and county taxes in this State are hereby made applicable to the Eeverglades Drainage District."

The laws, relating to State and county taxes, did not require the State to pay for lands which were "bid off" to it, and we see no reason why the Trustees should be required to pay for lands "bid off" to them.

Under the then existing law, when State and county taxes were not paid and the land was "bid off" to the State, title vested in the State two years after the issuance of the

certificate, but the land remained subject to redemption until a tax deed issued to a private purchaser who might purchase the certificate after two years from the date of the certificate.

Section 1546, Compiled General Laws of Florida, 1927, codifying previous Acts, provides that the owner of the land at the time of the tax sale or the bona fide successors in title of such owner shall at any time prior to the day of the sale of such land have the right to redeem the same by paying the amount expressed in the face of such tax certificate, together with the interest thereon, as provided in said Section, indicating the legislative intent that the lands should be held by the Trustees, in like manner, as lands are held by the State for unpaid State and county taxes.

We are unable to glean from the various Acts relating to the Everglades Drainage District any legislative intent that the Trustees of the Internal Improvement Fund were or are required to pay for tax certificates issued upon privately owned land within said District when said lands are "bid off" under the provisions of law to such Trustees, until such lands have been sold or redeemed, and we hold that the Trustees of the Internal Improvement Fund hold the certificated land and the certificates in trust for the Commissioners of the Everglades Drainage District.

We are unable to agree with the majority opinion in the case of Rorick v. Board of Commissioners of the Everglades Drainage District, reported in 57 Federal, 2nd Ed. page 1048, wherein opposite conclusions are reached, and we do agree with Judge Bryan in that case wherein he says:

"When land in the drainage district has been bid off for the trustees for the non-payment of drainage taxes, the title vests in the trustees, but they hold it subject to the

owner's right of redemption which continues until the land is sold. The sale must be for at least as much as accrued taxes, and in the event of such a sale, but not otherwise, the trustees are required to pay the delinquent drainage taxes. If they were purchasers in their own right, their obligation to pay would naturally arise as of the date of the tax sale, and would not be conditioned on a future sale. The provision of Section 1, Chapter 9119, Laws of 1923, subjecting the land within the drainage district held by the trustees to drainage taxes, refers to land owned by the trustees in their own right, and not to land held in trust under tax certificates. If it had been the intention of the Legislature to bind the trustees as purchasers of land upon which drainage taxes had not been paid, there should and doubtless would have been a plain and unequivocal provision to that effect. It is not to be inferred that the Legislature intended to impose a burden as great as is here contended for merely because it adopted existing provisions of law applicable to the holding and disposition of lands by the State upon default in the payment of ordinary taxes."

It therefore follows that the motion to quash the alternative writ should be sustained, and it is so ordered.

WHITFIELD, ELLIS and BROWN, J. J., and LOVE and CAMPBELL, Circuit Judges, concur.