GEORGE C. BEDELL and CHESTER BEDELL, as Co-partners as Bedell & Bedell, J. E. D. YONGE, DICKSON H. CARTER and FRANCIS B. CARTER, JR., as Surviving Members of Carter & Yonge, and FRANK E. BRYANT, v. W. O. LASSITER, JOHN G. HEIMERDINGER, ROBERT F. NEAFIE, BOARD OF COMMISSIONERS OF EVERGLADES DRAINAGE DISTRICT, a Body Corporate, *et al.*

196 So. 699
Division B
Opinion Filed May 21, 1940
Rehearing Denied June 25, 1940

44

*Hoffman & Robinson* and *Arnold A. Ross,* for Appellants;

*Morton B. Adams,* Attorney for Appellee W. O. Lassiter, and *William Roberts, Alex Baker* and *Watson & Pasco & Brown,* Attorneys for Appellee Robert F. Neafie.

CHAPMAN, J.—On February 1, 1938, W. O. Lassiter, in his own behalf and in the behalf of all the holders of bonds and interest coupons issued by the Everglades Drainage District, filed his amended bill of complaint in the Circuit Court of Dade County, Florida, against the Board of Commissioners of the Everglades Drainage District and the officers thereof, the State Treasurer, and others. The plaintiff Lassiter alleged that he was the owner and holder of past due and unpaid bonds and coupons of the Everglades Drainage District and in addition thereto other bonds and coupons of the drainage district had been issued in varying amounts and were held and owned by thousands of persons, firms and corporations scattered throughout the United States and that the bondholders constitute a class having a common and general interest in the subject matter of the suit and

that it was impracticable to bring all of them before the court.

It was alleged that the district issued and had outstanding and unpaid bonds aggregating several million dollars and was in arrears in the payment of interest coupons approximating $2,346,203.23, and additional bonds maturing, as well as interest coupons. The payment of the bonds and interest coupons were guaranteed by annual acreage taxes imposed on the lands of the district according to benefits received and the district had defaulted in the payment of its bonds and coupons maturing January 1, 1931, and no reasonable prospects existed for payment thereof in the future.

Under the laws of Florida the acreage taxes levied and collected against the land situated in the district constitute a trust fund for the equal pro rata benefit of all holders of matured bonds and interest coupons. The past-due bond and coupon obligation of the district exceeded seven million dollars and the acreage tax fund on hand is in excess of $200,000.00. There has been paid annually acreage taxes on portions of the lands situated within the district.

There has been paid out of the proceeds of the acreage taxes to certain groups of holders of judgments procured upon the bonds and coupons of the district certain sums, but the payment of the past-due bonds and coupons of the plaintiffs from the acreage tax fund has not been made although requested so to do. The groups receiving the moneys from the acreage tax fund and other funds have returned to the Board of Commissioners of the Everglades Drainage District a percentage of the money received, and with said moneys the board will pursue the work located within the drainage area.

The amended bill prayed for: (a) an accounting; (b) a temporary restraining order; (c) that out of the acreage tax fund costs and reasonable fees of the plaintiff should be paid.

An answer or answers to the amended bill of complaint were filed in behalf of the defendants.

Several bills of intervention on the part of bondholders and judgment creditors of the district were filed in the suit at bar, and on August 8, 1939, a final decree was entered adversely to the appellants Carter & Yonge, Bedell & Bedell and Frank E. Bryant. An appeal was taken from the final decree, the record perfected and lodged in this Court and the case is here for review.

It is contended in this Court that the lower court erred in entering the provisions of the final decree, viz.: (1) that portion of the final decree dated August 8, 1939, recorded August 8, 1939, in Chancery Order Book 514, at pages 128 to 143, wherein the court denied Bedell & Bedell, Carter & Yonge and Frank E. Bryant a right to the payment of their respective claims out of the proceeds of the acreage tax fund of the Everglades Drainage District; (2) that portion of the final decree dated August 8, 1939, and recorded August 8, 1939, whereby the court decreed that the trust fund involved herein should stand charged with a lien in favor of the plaintiff W. O. Lassiter for the reimbursement of his costs and proper expenses incurred in the prosecution of this case, and also should stand charged with a lien in favor of the attorneys of record for the plaintiff Lassiter for a reasonable attorney's fee or compensation for the services of said attorneys rendered herein for the benefit of the plaintiffs as a class and all holders of bonds and coupons of the drainage district.

The record shows that the judgment acquired by Bedell & Bedell on August 24, 1937, against the Board of Everglades Drainage District in the sum of $5,900.58 was for professional services rendered in 1932 in handling litigation, viz.: Rorick, *et al.,* v. Board of Everglades Drainage District

reported in 57 Fed. (2d) 1048; Rorick, *et al.,* v. Knott, 69 Fed (2d) 708; State *ex rel.* Sherrill v. Milam, *et al.,* 113 Fla. 491, 116 Fla. 492, 153 So. 100, 125, 136; State *ex rel.* Board of Comm'rs. v. Sholtz, 112 Fla. 756, 150 So. 878; Florida Ranch & Dairy Co. v. Everglades Drainage District, 74 Fed. (2d) 914; 293 U. S. 521. The judgment in the sum of $5,769.23 in behalf of Carter & Yonge dated August 23, 1937, was for professional services rendered the board in connection with the handling, in whole or in part, of the above named cases.

The lien in favor of the attorneys for W. O. Lassiter for a reasonable attorney's fee or compensation to be charged against the trust fund, it is asserted, inured to the benefit of the said plaintiff and all other holders of bonds and coupons of the district as a class having a common interest, and that the acreage tax was being unlawfully expended by the board in payment of judgments to the exclusion of the bondholders, and in obtaining a restraining order and decree in the lower court these unlawful practices were frustrated and the funds returned to their true and lawful channel. A committee representing the bondholders were parties to these alleged unlawful expenditures. The authority or power to pay these judgments out of the administration fund provided for by Section 1592 C. G. L., "whenever a levy is made of one mill as a maintenance tax" is not material to the issues involved in the case at bar.

The questions to be adjudicated by this Court are, viz.: (a) Can the judgments against the Board of Commissioners of Everglades Drainage District now held and owned by Bedell & Bedell and Carter & Yonge be lawfully paid out of the drainage tax fund; (b) can attorney's fees for W. O. Lassiter as a class plaintiff be lawfully paid out of the acreage tax fund?

48

In the case of State *ex rel.* Yonge v. Franklin, 134 Fla. 765, 184 So. 237, it was held that money collected under Chapter 6456, Laws of Florida, Acts of 1913, and Acts amendatory thereof, constitutes a limited trust fund in the nature of assessments for the benefit of the Everglades Drainage District and the bondholders thereof and out of these moneys loans to the district are to be paid pro rata and the statute contemplates payment of all proper expenses connected with the execution of the statutory trust, and where the statute does not authorize the payment out of the trust funds of different items of expense, the same may be enforced in a court of equity.

In the case of State *ex rel.* Lawler v. Knott, 129 Fla. 136, 176 So. 113, this Court held that the rule of "first come first served" was inapplicable to the outstanding bonds of the Everglades Drainage District because the power of taxation of property within the drainage district was not inexhaustible but was limited. The Legislature has. the power to tax the property of the drainage area but this power is limited as to the creditors of the district and the security pledged for the payment of the bonds of the district is the power to tax that was in force at the time the bonds of the district were issued. This Court, in the case of First State Savings Bank of Morenci v. Little River Drainage District, 122 Fla. 304, 165 So. 48, held that funds on hand raised by taxation are equitable assets of the drainage district to be administered by statutory trustees in accordance with the terms of the law under which such assets were collected and held.

· In the case of State *ex rel.* Keefe v. Cotton, 106 Fla. 733, 143 So. 644, shows that the City of St. Petersburg had issued municipal bonds and had levied a certain tax with which to pay interest and to retire the said bonds so issued when the city council attempted to divert the said funds so

collected and to pay therewith debts, bonds and general obligations of the city, and this Court held that said funds could not be diverted to other purposes but should be held to pay or retire the bonds for which the tax was levied and the fund created, and if the funds were diverted to other purposes it would mean an impairment of the contract as expressed in the bonds. See Chamberlain v. City of Tampa, 40 Fla. 74, 23 So. 572; Hyde v. Melson, 61 Fla. 643, 55 So. 79; Harrell v. Woodberry, 62 Fla. 205, 56 So. 297.

It is contended by counsel for the respective parties that the money out of which the two judgments are to be paid is from the proceeds arising from the acreage tax levy and they cite Section 1535 C. G. L. as authority for the payment of said judgments.

Section 1535, C. G. L., is viz.:

"The proceeds arising from the acreage tax levied by this Article shall be used by the said board in the construction and maintenance of such canals, drains, levees, dikes, dams, reservoirs, sluices, revetments and other works and improvements as the board may deem necessary or advisable to drain and reclaim the lands in said district, and to the continuation of the construction of such canals, dams, locks, levees, and reservoirs as are now in process of construction within said drainage district, and to the purchase of lands or personal property as the board may deem necessary to carry out the purposes of this Article, and to the expenses of the board in the conduct of said work and its business generally, and to repay any loans and interest thereon, and to the creation of a sinking fund for the retirement of the principal of the bonds that the board may issue under the provisions of this Article, and to the payment of the interest thereon."

And likewise Section 1560 C. G. L. provides:

"It shall be the duty of the State Treasurer or his succes-
sor in office, as custodian of the funds belonging to the said
board of commissioners and to the said drainage district, out
of the proceeds of the taxes levied and imposed by this Article
and out of any other moneys in his possession belonging to
the said board or to the said drainage district, which moneys
so far as necessary are hereby set apart and apportioned for
the purpose, to apply said moneys and to pay the interest
upon the said bonds as the same shall fall due and at the
maturity of the said bonds out of the said moneys to pay the
principal thereof, and there shall be and there is hereby cre-
ated a sinking fund for the payment of the principal of the
said bonds, and the said board shall set apart and pay into
such sinking fund annually out of the taxes levied and im-
posed by this Article, and the other revenue and' funds of
the said district, at least two per cent of the amount of bonds
outstanding. The said sinking fund for the payment of the
principal of said bonds shall not be appropriated to any
other purpose than that herein specified."

In construing Sections 1535 and 1560, *supra,* the District
Court in Rorick v. Board of Comm'rs. of Everglades Drain-
age District, 57 Fed. (2d) 1048, held that Section 1560 C. G.
L. is specific and mandatory. The bonds here involved were
issued under Chapter 6456, Acts of 1913, Laws of Florida,
and amendments thereto. The law in force at the time of
making a contract and in pursuance of which the contract
is made enters into and forms a part of the contract the
same as if it was incorporated into it and made a part there-
of. See County Comm'rs. of Columbia County v. King,
13 Fla. 451; Canova v. State, 18 Fla. 512. Any statute
enacted by the Legislature impairing the obligation of a con-
tract is void. See Cragin v. Ocean & Lake Realty Co., 101
Fla. 1324, 133 So. 569, 135 So. 795. The Legislature can-

not take away from a private party a right to recover money that is due when the Act is passed. See Forbes Pioneer Boat Line v. Everglades Drainage District, 258 U. S. 338, 42 Sup. Ct. 325, 66 L. Ed. 647, 80 Fla. 252, 86 So. 199. The money with which to pay the bonds was the acreage tax levy provided by Section 1535, *supra*.

In the case of Rorick v. Board of Com'rs. of Everglades Drainage District, 57 Fed. (2d) 1048, the Court had before it the provision above quoted and speaking through Mr. Justice Strum said:

"We hold, therefore, that the provisions of Chapter 6456, Acts 1913, and its several amendments pursuant to which plaintiff's bonds were issued and acreage taxes to pay the same were levied, constitute a contract between plaintiffs and the district; that the legislation imposing acreage taxes to pay those bonds and interest, which was in effect when the bonds were issued, cannot be withdrawn, nor can the proceeds of such taxes be diverted to other purposes, so long as such proceeds are necessary to pay interest and create a sinking fund as prescribed by Section 24 of Chapter 6456, now Section 1560, Comp. Gen. Laws 1927, and the several resolutions of the board, all of which are parts of the bond contract. We further hold that the proceeds of the acreage taxes and other funds of the district (except the ad valorem tax under the Act of 1921) are specifically appropriated (Lainhart v. Catts, 73 Fla. 735, 75 So. 47, text 54; Bannerman v. Catts, 80 Fla. 170, 85 So. 336; State v. Allen, 83 Fla. 214, 91 So. 104; text 105, 26 A. L. R. 735) and pledged to the extent and for the purposes just mentioned; the appropriation and pledge continuing so long as these funds are necessary to meet the requirements of the bonds issued pursuant thereto. It is the duty of the State Treasurer and of the board of commissioners to devote said funds

to the purposes named, as far as may be necessary, before using any part thereof for any other purpose."

Section 1560, C. G. L., makes it the duty of the State Treasurer out of the proceeds of the taxes levied and imposed to * * * apply or pay said moneys to the payment of the bonds and interest thereon as the same shall mature and likewise a sinking fund is created for the payment of the bonds and interest, and there shall be paid into the sinking fund money annually from or out of the taxes levied. The sinking fund for the payment of the bonds and interest shall not be appropriated for any other purpose than that enumerated in Section 1560, *supra*.

Section 1535 C. G. L. provides that the proceeds arising from the acreage tax shall be used for the purposes enumerated and for the expenses of the board in the conduct of the work and its business generally and to repay any loan with interest thereon, and to the creation of a sinking fund for the retirement of the bonds and the payment of interest thereon.

If payment of the judgments out of the acreage tax fund is permitted or allowed, it will in effect mean the payment of money for a purpose not authorized by Sections 1560 and 1535, C. G. L., and a diversion thereof from the purpose cr purposes for which the funds were created. These funds are controlled by the contract under which the bonds were issued and this Court is required to observe the contractual relations between the drainage district and its bondholders. We find no authority for the payment thereof under the statute or any inference that may be deduced therefrom. These funds are controlled entirely by the statutes that appropriated the money and authorized the acreage levy.

We are unable to find in this record a showing authorizing the payment of attorney's fees, costs, etc., to be ex-

pended on the part of the class plaintiff in this suit. The costs of assessment and collection of the acreage tax by the tax assessor and collector of the drainage district are incidental costs and a proper item to be paid out of the said acreage tax.

That portion of the final decree appealed from and assigned as error denying payment of the Bedell & Bedell, Carter & Yonge and Frank E. Bryant judgments out of the proceeds of the acreage tax fund is hereby affirmed. That portion of the final decree appealed from and assigned as error charging the acreage tax fund with a lien in favor of W. O. Lassiter, class plaintiff, for costs, proper expenses and a reasonable attorney's fee and that out of said acreage fund the payment thereof shall be made is hereby reversed and each thereof is disallowed.

The lawful fees of the tax assessors and collectors of the counties within said drainage district are lawful charges and items incidental to the collection of the acreage tax and when lawfully approved as to amount or amounts should be paid out of said acreage fund.

The final decree appealed from is affirmed in part and reversed in part and the cause is remanded for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.