MATHEWS, Justice.
This appeal results from an eminent domain proceeding in the Circuit Court of Duval County, Florida.
This proceeding originally described the property as two parcels, each of which was a part of Westbury Subdivision of Block 2, East Jacksonville, according to plat recorded in Plat Book A. K., page 82, of the Public Records of Duval County. During the course of settling the pleadings, another piece of property was added. The ownership and title to one parcel was not in dispute, but a dispute arose between some of the defendants as to the ownership of the remaining portions of the property. The dispute as to the remaining portions was between C. B. Peeler, on the one hand, and defendants, Cheesborough and others, on the other hand. There was also some claim that C. B. Peeler owned a mortgage upon a portion of the land.
After these disputes as to title and as to a’mortgage on a small portion arose, C. B. Peeler made a motion for severance, whereby he asked for a separate trial from other defendants in assessing the damages to the property where there was no question of title and the other piece of property where the title was in dispute. C. B. Peeler also moved for a continuance of the trial of the cause until the questions of title and ownership could be decided. The Court denied each of said motions.
Just before the trial of the cause C. B. Peeler insisted that title to and ownership of the property should be determined by the same jury and in the same proceeding wherein the compensation to be paid for the property was determined.
C. B. Peeler then moved the Court to swear the jury in accordance with the following form of verdict:
“You do solemnly swear that you will well and truly try and decide the issues between Petitioners and Defendants, severally, as to what compensation shall be made to the Defendants, severally, and include a reasonable attorney fee for the property sought to be appropriated, irrespective of any benefit from any improvements proposed by Petitioners, and a true verdict give according to the evidence, So Help Me God.”
Then the following proceedings were had:
“The Court: The Motion is denied and the Clerk is instructed to give the customary oath in condemnation cases to the jury. Which oath was in words and figures as follows, to-wit:
“‘You do solemnly swear that you will well and truly try and decide the issue between Duval County, a political subdivision of the State of Florida, and Florida State Improvement Commission, a State Agency, Petitioner, and Ruby Cheeseborough & Bertha Robinson, et al., defendants, as to what compensation shall be made to the defendant for the property sought to be appropriated, irrespective of any benefit or any improvement proposed by the petitioner, and a true verdict give, according to the evidence; so Help You God.’
“The Court: Gentlemen of the Jury, the attorneys for the respective parties and the Court, wishes to advise you, before the presentation of testimony in this case, that the sole issue to be determined by you Gentlemen of the Jury and the sole issues to be presented by the attorneys for the respective parties, is the value of compensation to be paid upon property as brought into this suit in a Complaint as filed by Duval County and the State Improvement Commission. There are *249 other questions contained in the pleadings filed of record in this case. However, those matters are to be adjudicated at a different time and is not to be considered by the Jury at this time. Therefore, I ask the attorneys for the respective parties to confine your testimony, or your evidence, solely to, the value of the land sought to be taken by the Petitioners in this Complaint, and you, Gentlemen are solely concerned with the value of this land, plus a reasonable attorneys fee to be awarded attorneys for the Defendants.”
The oath which was administered to the jury must be taken in connection with the instructions of the Court as to, what the issues were. The Court not only instructed the jury in accordance with the quotation hereinabove set forth, as to the issues, including an attorney’s fee, but also in response to a question asked by the attorney for Mr. Peeler, “Will you instruct the jury?”, stated:
“The Court: The jury will be given an explanation of the issues in this case of the value of the property and of the damages may be given, along with the value of the property, so to speak, plus attorney fees, and other questions not to be presented to this jury. All right, let’s proceed.”
The transcript of the record brought to this Court by C. B. Peeler is only a partial transcript and does not contain the full instructions of the Court to the jury. Neither does the transcript contain any assignment of error based upon any instruction to the jury in the general charge which was omitted from the transcript. Therefore, for the purpose of this appeal it is conclusive that the Court did what it said it would do and gave to the jury an explanation of the issues in the case, of the value of the property and of the damages to be given “along with the value of the property * * * plus attorney fees and other instructions.”
As shown by the record the jury found attorney’s fees for the defendants to be $700 “for those who are hereinafter found to be the owners of the said property and entitled to compensation therefor.” There is no complaint about the amount of the attorney’s fees. The only complaint with reference to attorney’s fees is that they should be apportioned in accordance with the ownership of the property in dispute. The apportionment of attorney’s fees should be made after the ownership of the property is decided.
With reference to the property in dispute there is no complaint as to the value of same as found by the jury. The complaint is that the question of ownership and title was not submitted to the jury and, therefore, the value of each particular piece of property was not determined by the jury. The verdict shows that the jury found the value of Parcel No. 205 to be $2,400, and no dollars for damage to adjoining property; for Parcel No. 225, $75; and damages to the remainder, the sum of $200; or a total of $2,675 for all of the property involved and damages to any remainder. There was no error with reference to the attorney’s fees and we may eliminate that question from further consideration.
There is no error assigned with reference to the value of the property taken, or damages to, the remainder, or that the jury was not properly instructed with reference to these matters. These questions may also be eliminated from any further consideration.
It is insisted, however, that the Court committed error; first, in failing to grant the motion for severance and a continuance with reference to the trial of the eminent domain suit until the questions of title and ownership could be settled; second, that the Court committed error because it refused to permit the disputed questions of ownership and title to be tried before the same jury in the condemnation proceedings; and, third, that C. B. Peeler is now without a remedy to have determined his title and ownership to the land, and therefore, the amount of the money now in the registry of the Court to which he may be entitled for damages and also the amount of attorney’s fees to be apportioned to him, and is deprived of his property without due process.
*250 With reference to the first and second contentions above set forth, it appears that the appellant “blows hot and cold in the same breath.” In the same document he complains that the Court erred because it would not grant to him a severance for a separate trial as to title and ownership', and that the Court erred because it refused to permit the trial of the issue of ownership or title before the same jury.
Section 73.11, F.S.A. provides for the form of verdict. The verdict shall state; first, an accurate description of the property taken; second, the compensation to be made therefor, including a reasonable attorney’s fee for the defendant’s attorney; and, third, “the amount of such compensation to which each owner is entitled, if sufficient facts are before the court to adjudicate the distribution of the proceeds.”
Although the proceedings were in eminent domain and are governed by the particular statutes relating to eminent do1main, where the statutes are incomplete, we may refer to other statutes relating to civil practice and procedure. Subsection 7 of Section 52.11, F.S.A. provides that any party may state as a cross-claim any claim within the jurisdiction of the Court by one party against a cross-party, etc. Subsection 9 of Section 52.11, F.S.A. provides, “When found necessary to the ends of justice, the court may order separate trials of the issues made by any counterclaim or cross-claim, and judgment on a counterclaim or cross-claim may be rendered when the court has jurisdiction to do so, even if the claim of the opposing party has been dismissed, or otherwise disposed of.”
It would, therefore, appear that the Court had jurisdiction and authority to exercise a discretion and order separate trials when necessary to the ends of justice. In the case at bar the jury did not find, in so many words the amount of compensation to which each owner was entitled, but did find the amount of compensation to be paid for each particular piece of property and that such compensation should be paid to the owners when the owners were determined.
There was sufficient justification for the form of the verdict and judgment in failing to specify to whom the compensation for the land should be paid and to whom the attorney’s fees should be paid because the questions of ownership and attorney’s fees were left for future determination in some other proceeding.
This proceeding is a proceeding in rem and the only thing the County was interested in was acquiring the fee simple title to the property involved irrespective of ownership. Section 73.04, F.S.A. provides for the publication of notice whereby all parties interested in the property are called upon “to show what right, title or interest they have or claim in or to- said property”. This section does not necessarily mean that the right, title or interest of the parties must be determined by the jury in the same verdict where the amount of compensation to be paid is determined. The purpose of this section is to provide due process and to call upon all parties interested to assert their claims so that in due course and in due time such claims may be determined.
Original jurisdiction to try and determine issues with reference to the title to and ownership of real estate is vested exclusively in the Circuit Court by Section 11 of Article 5 of the State Constitution, F.S.A. Such issues should be tried before a jury of six persons and not a jury of twelve. Section 70.08, F.S.A. Where the question of title to or ownership of land is raised between different parties in an eminent domain proceedings, the award for the value of the land taken should be made by the jury in the eminent domain proceeding and the apportionment of the money should be made later in a proper proceeding after the interest, title or ownership of the various parties has been determined. 29 C.J.S., Eminent Domain, § 197, page 1102, and 18 Am.Jur. p. 872, § 239.
The record shows that C. B. Peeler actively participated in the trial before the jury in the eminent domain proceedings. He not only produced witnesses who testified as to the value of the parcels of land, *251 the title to which was in dispute, but he, himself, qualified and testified as to such values. H-e, therefore, had his day in Court as to the values of such lands.
With reference to the title to, or ownership, in any portion of the land taken, the Circuit Court has ample authority to have tried and determined such issues before a jury of six persons, as contemplated by Section 11 of Article 5 of the State Constitution and Section 70.08, F.S.A. After these matters are determined, the Circuit Court has ample authority to make an apportionment of the money in the registry of the Court and do complete justice to' all parties concerned. Section 73.12, F.S., F.S.A.
The appellant, C. B. Peeler, is in Court, has had due notice and has not been denied his property without due process of law, and now has ample opportunity to proceed to protect his rights.
Affirmed.
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.