73 So.2d 684 (1954)
SHAVERS et al.
v.
DUVAL COUNTY et al.
Supreme Court of Florida. En Banc.
June 11, 1954.
Rehearing Denied July 16, 1954.
*686 C.B. Peeler, Jacksonville, for Eddie L. Shavers.
John E. Teate, Jacksonville, for Annie M. Shavers.
Joseph M. Glickstein, Jacksonville, for Jacksonville Realty Investments, Inc.
Harvey Mabry, Jacksonville, for appellee.
SEBRING and MATHEWS, Justices.
This is an appeal from a judgment in a condemnation proceeding wherein a mortgagee who holds a mortgage on the property sought to be condemned was made a party defendant in the proceedings. The mortgage in question provides for the retirement of the mortgage debt and interest thereon in stated monthly installments. The mortgage does not contain a provision giving to the mortgagor the right to anticipate the installment payments or to discharge the debt other than in strict accordance with the terms of the note and mortgage.
The questions on the appeal are whether the mortgagee is entitled to an attorney's fee for filing his defense in the proceeding; and whether the mortgagee is entitled to be paid, from the amount of the jury award to the owner, the entire principal amount of the mortgage together with interest thereon to date, and also the full amount of all future interest agreed to be paid to the maturity date of the mortgage.
It is settled in this jurisdiction that attorney's fees cannot be taxed as costs in any cause unless provided for by contract or by statute. State ex rel. Royal Ins. Co. v. Barrs, 87 Fla. 168, 99 So. 668; Webb v. Scott, 129 Fla. 111, 176 So. 442; Ex parte Graham, 136 Fla. 20, 186 So. 202; Dorner v. Red Top Cab & Baggage Co., 160 Fla. 882, 37 So.2d 160; Phoenix Indemnity Co. v. Union Finance Co., Fla., 54 So.2d 188. The mortgagee concedes that it has no contract authorizing the recovery of attorney's fees and costs against the petitioners. It contends, however, that sections 73.11 and 73.12, Florida Statutes 1951, F.S.A., authorize an allowance of attorney's fees to a defendant mortgagee in a condemnation proceeding.
Section 73.11, Florida Statutes 1951, F.S.A., prescribes the form of verdict that shall be returned in a condemnation proceeding. It requires the verdict to contain: "First, an accurate description of the property taken; second, the compensation to be made therefor, including a reasonable attorney's fee for the defendant's attorney; and third, the amount of such compensation to which each owner is entitled, if sufficient facts are before the court to adjudicate the distribution of the proceeds."
Section 73.12 prescribes the form of judgment that must be entered on a verdict in a condemnation proceeding. It provides: "The judgment shall recite the verdict in full and shall be that the property therein described be appropriated to the petitioner in fee simple, or the particular right or estate in said property sought, be appropriated to the petitioner, upon the petitioner paying or securing by deposit of money the compensation found by the verdict of the jury. The court upon appropriate petition shall determine the rights of any mortgagees, judgment creditors and lienholders in respect to the compensation awarded to each owner by the verdict."
The mortgagee maintains in respect to these sections of the statute that they, and particularly section 73.12, indicate that the Legislature intended that a mortgagee should be considered as much an owner of the property sought to be condemned as the owner of the fee simple title, and that to fail to award a mortgagee defendant a reasonable attorney's fee incurred in establishing *687 his claim and otherwise defending the proceeding would cause the mortgagee to receive less than the full and just compensation which the Constitution requires be awarded an owner in a condemnation proceeding and thereby would deprive him of property without due process of law.
We find ourselves unable to agree that such was the intention of the Legislature.
Section 73.11, Florida Statutes 1951, F.S.A., deals only with the form of verdict to be returned in a condemnation proceeding. It lays down three requirements for a valid verdict. The first of these is that the verdict must contain an accurate description of the real property to be appropriated. See Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578. The second is that it must state the compensation to be awarded the owner or owners of said property; said compensation to be made up of the following items: (a) the fair value of the property irrespective of any benefit from any improvement proposed by the petitioner (Cameron Development Co. v. U.S., 5 Cir., 145 F.2d 209); (b) compensation to the owner or owners for any injury, damage or destruction to an established business of more than five years standing upon adjoining, adjacent or contiguous lands of the owner (section 73.10); and (c) a reasonable attorney's fee to counsel for the owner or owners for defending the proceeding. The third requirement is that the verdict shall apportion the aforementioned compensation among each of the owners, that is to say, among those who have a proprietary interest or estate in the property taken (see 18 Am.Jur. p. 872), if sufficient facts are before the court to show the respective interests or estates of each.
We think it plain that the phrase "including a reasonable attorney's fee for the defendant's attorney", which appears in section 73.11 in respect to the second requirement of the verdict, pertains exclusively to the compensation to be awarded the owner or owners for the property taken, and is included in the award so that the owner or owners will be made whole, in conformance with the mandate of the Florida Constitution that "No private property, nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner * * *." Section 29, Article XVI, and section 12, Declaration of Rights, Constitution of Florida, F.S.A. Compare Dade County v. Brigham, Fla., 47 So.2d 602, 18 A.L.R.2d 1221. It has no application to a defendant mortgagee, whose rights by virtue of the verdict and judgment are transferred to the award made to the owner, Seaboard All-Florida R. Co. v. Leavitt, 105 Fla. 600, 141 So. 886, unless it can be said that the mortgage held by the mortgagee gives him a proprietary interest or estate in the land condemned.
That such is not the nature of a mortgage in this jurisdiction is firmly established by the decisions. Under our holdings, a mortgagee does not have an estate or interest in mortgaged lands, by virtue of his mortgage, but is merely the owner of a chose in action creating a lien on the property. Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659; Waldock v. Iba, 114 Fla. 786, 150 So. 231, 803, 153 So. 915. Therefore, whatever the rule may be elsewhere, we think it clear that under our condemnation statutes (which from their nature require a strict construction: Florida Cent. & P.R. Co. v. Bear, 43 Fla. 319, 31 So. 287), a mortgagee of lands sought to be condemned cannot be held to be an "owner" and hence entitled to an attorney's fee to be paid by the petitioner, but must be deemed, in this regard, to fall in the class with judgment creditors and other lienholders, as to whom no attorneys' fees are allowable.
As to section 73.12, Florida Statutes 1951, F.S.A., upon which the appellant also relies, we fail to see its application to the point in issue. While it does provide that a mortgagee, judgment creditor or other lienholder, upon appropriate petition being filed, may have an adjudication of his claim and a determination of his rights in respect to the compensation awarded to each owner of the property, we find nothing therein to indicate that either in a proceeding *688 predicated upon such a petition, or in the main suit in which compensation is awarded the owner or owners for the property taken, an attorney's fee is allowable to such a lienholder. Section 73.12 is simply a provision by which the circuit court is given authority (after determination of the questions of value, title, and the validity of liens) to make an apportionment of the money in the registry of the court to owners and lienholders showing the right thereto. See Peeler v. Duval County, Fla., 66 So.2d 247.
The final question raised by the mortgagee goes to the propriety of the order entered by the trial court striking that portion of defendant's answer in which the claim was asserted for the allowance of interest on the mortgage beyond the date of the condemnation judgment. In this regard it is urged by the mortgagee that the mortgage note of which it is the owner specifically states that the note is secured by a mortgage and is subject to all of the covenants contained therein; that the mortgage and note do not contain a stipulation according to the maker the privilege of prepayment; that under the terms of their agreement the mortgagors contracted to pay the principal plus the interest according to the tenor and terms of the mortgage and note for the full period of the mortgage; and that to require the mortgagee to accept less than full interest up to the maturity date of the note and mortgage would amount to an impairment of the obligation of the contract in violation of the State and Federal Constitutions.
It appears to us that the appellant has raised this question prematurely. Section 73.12, Florida Statutes 1951, F.S.A., provides that the court upon appropriate petition shall determine the rights of mortgagees, judgment creditors and lienholders in respect to the compensation awarded to each owner by the verdict of the jury. We think this statute contemplates that issues raised by such petitioners concerning their rights to share in the award are to be decided and determined not in the main suit but at a later hearing. Under this construction of the statute, the matter which was stricken from the mortgagee's answer would not have been a proper issue for determination by the twelve-man jury empaneled to try what compensation should be made to the owners for the property sought to be condemned or appropriated, but is one to be determined in a subsequent, supplemental proceeding. Compare Peeler v. Duval County, supra. Consequently, the trial court did not err in refusing to submit the issues to the trial jury.
However, inasmuch as the matter stricken from the answer will become important when a hearing is held by the trial court pursuant to section 73.12, supra, for the purpose of making proper distribution of the money awarded the owner, we think it appropriate for us to express our views in respect to the basic issue.
In this case condemnation proceedings were had in which the owner and the mortgagee were made parties. Each appeared and answered, pursuant to notice and due process of law as required by the Statutes. There was no objection of improper notice, service or jurisdiction. In the answer filed by the mortgagee it was stated that it was the owner and holder of a certain mortgage securing payment of original note in the sum of $2,150, reduced by payment on account to the principal sum of $1,585.30, and which was admitted in the answer of owner Annie M. Shavers. It then claimed that it was "entitled to be paid said balance, together with interest thereon, until the maturity of the said note according to the tenor and terms thereof".
The Circuit Judge held that it was to be paid the balance of principal, but was only entitled to interest on the balance of the principal sum to the date of an order of distribution after the money had been paid into the registry of the Court by the condemnor.
The right or power of eminent domain is not granted to the State but is reserved as an attribute of sovereignty. It may be exercised by the State in any manner it sees fit so long as constitutional restraints *689 are not violated, which are that private property shall not be taken for public use without due process of law and just compensation.
It is unnecessary to consider the question of due process in this case as it is not raised in the pleadings or in any assignment of error, and, as a matter of fact, the record shows that due process was had.
The only issue remaining is whether or not the mortgagee, under the facts shown in this case, is entitled to be paid interest to the date of maturity fixed in the note on the balance of principal of its mortgage debt after the date of an order of distribution of an amount of money sufficient to pay the balance of the principal sum in full? The trial Judge answered this question in the negative.
Although, by common knowledge, we know that it has been the general practice and custom in this State that the mortgagee should only be paid the principal of his indebtedness and interest thereon to the date of distribution, the question as presented in this Court for a judicial determination is one of first impression. The amount involved is small but the increase of public improvements and the acquisition of property by eminent domain proceedings is constantly on the increase. It is a matter of great importance for the State, its political subdivisions and all its property owners to know the rights, limitations and reservations with reference to this matter.
It has long been firmly established that the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein. Humphreys v. State ex rel. Palm Beach Co., 108 Fla. 92, 145 So. 858; State ex rel. Select Tenures v. Raulerson, 129 Fla. 346, 176 So. 270; City of Bradenton v. Fusillo, 134 Fla. 759, 184 So. 234; Bedell v. Lassiter, 143 Fla. 43, 196 So. 699; Ivey v. State, 147 Fla. 635, 3 So.2d 345; State v. City of Pensacola, Fla., 40 So.2d 569; 12 Am.Jur., Contracts, Sec. 240, p. 769.
The Constitutions of the United States and the State of Florida and the laws enacted under such Constitutions are a part of every such contract.
It is urged that to deny to the mortgagee the right to be paid interest to the maturity date of the debt, notwithstanding it has been paid its principal in full, will impair its contract in violation of the Constitutions of the United States and the State of Florida. It is quite true that the Constitution guarantees the right to contract and further provides that the obligations of contracts shall not be impaired. This constitutional guarantee is only a part of the Constitution and it must be construed in connection with other provisions of the Constitution. When we construe the provision with reference to the obligation of contract the conclusion is inescapable that the guarantee goes no further than to prohibit the impairment of the obligation of the contract, unless the impairment is authorized by other provisions of the Constitution. Every person must recognize and know that the right or power of eminent domain is an attribute of sovereignty and in the exercise of that inherent right or power, the obligation of the contract may be impaired with the limitation that when so impaired by taking private property for public use, the sovereign shall pay "just compensation."
The protection against the impairment of the obligation of the contract is no greater than other guarantees contained in the Constitution and, particularly, in the Bill of Rights. Every person is guaranteed the right of enjoying and defending life and liberty and acquiring and protecting property. There are other great rights guaranteed to the people by the Constitution; such as, the right of freedom of speech and of the press, freedom against unreasonable searches and seizures, the free exercise and enjoyment of religious profession and worship, and others. These freedoms and rights are not absolute  each of them is subject to lawful restraints and *690 limitations. The right to own and enjoy property is no higher in the constitutional sense than the right of liberty. Absolute freedom or liberty of the individual without limitation and restraint by law would result in anarchy. Absolute freedom and liberty to own or acquire property would ignore the police power which restrains the use of property and the other right of eminent domain by which private property is acquired for public use. There is no such thing under our constitutional system of government as absolute liberty or freedom, without limitation and restraint.
In 11 Am.Jur., Constitutional Law, Sec. 318, p. 1108, it is stated:
"The people have protected not only their persons from unreasonable treatment by governmental authority by virtue of the Bill of Rights, but also their property. * * *"
In 11 Am.Jur., Constitutional Law, Sec. 320, p. 1112, it is stated:
"The provisions of the Constitution of the United States and of the several states guaranteeing the freedom of the press are intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large. Where a private citizen has the right to speak the truth in reference to the acts of government of public officials or of individuals, the press is guaranteed the same right; the press, however, does not possess any immunities not shared by every individual."
In 11 Am.Jur., Constitutional Law, Sec. 330, pages 1138 and 1139, it is stated:
"In spite of the broad scope of the fundamental right of liberty and the jealous protection by the Constitution of the rights of the individual, liberty is not a right which is uncontrollable or which is absolute under all circumstances and conditions. It is liberty in a social organization, and when one becomes a member of society, he necessarily parts with some privileges which, as an individual not affected by his relations to others, he might retain. Hence, liberty does not signify unrestrained license to follow the dictates of an unbridled will. One who is prevented from injuring another cannot justly assert that he has himself been deprived of any right. It has been said that society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy and that the liberty of one individual must necessarily be subject to the same right in all others.
"Constitutional liberty is always a relative term and, at most, means liberty regulated by just and impartial laws; in other words, such liberty is natural liberty so far restrained by human laws as is necessary and expedient for the general advantage of the public. * * *" (Emphasis supplied.)
As this right to acquire and own property is not absolute, it is necessary to consider the restraints and limitations, if any, with reference thereto. As far as this discussion is concerned, the police power is not involved except by comparison. We are concerned only with the power of eminent domain which is an attribute of sovereignty. The right to own and acquire property by the individual is subject to the right or power of eminent domain. The right or power of eminent domain possessed by the sovereign is limited or restrained by that provision of the Constitution for the protection of the individuals against arbitrary power that such private property shall not be taken for a public purpose without just compensation.
It is urged that if, in the exercise of the power of eminent domain, a contract is curtailed, modified or changed, the obligation of the contract has been impaired. The constitutional guarantee is not that the note secured by the mortgage will not be modified, changed or altered, but that if the property which is the subject matter of the mortgage is taken there shall be paid just compensation.
*691 In this case there is involved a note and mortgage. The note on its face contains this provision: "This note is secured by a mortgage on real estate of even date herewith; is subject to all the conditions contained therein". The mortgage obligates the mortgagor to pay all taxes, assessments, levies, liabilities, obligations and encumbrances of every nature and kind on the described property, to keep the buildings insured, to permit or suffer no waste, impairment or deterioration of the property or any part thereof and then provides that if each and every of these stipulations, agreements and covenants are not fully performed, complied with and abided by, the aggregate sum mentioned in said promissory note shall become due and payable forthwith or thereafter at the option of the mortgagee.
It appears that the right to accelerate the due dates of the note is left completely within the discretion of the mortgagee.
In this case the impairment or complete destruction of the security so far as the mortgage is concerned is complete, due process has been obtained and a claim with reference to the note and mortgage has been made, the value of the land has been established and the compensation for the property has been paid into the registry of the Court. Under such circumstances, without fault of the mortgagor and consequently without a breach of the covenants by him, an acceleration of the maturity of the note has been brought about by the Act of the Sovereign under the Constitution and the Statutes and proper action taken thereunder in the eminent domain proceedings. Nothing further remains to be done except for the Court to proceed under Section 73.12, F.S., F.S.A., which contains the following:
"* * * The court upon appropriate petition shall determine the rights of any mortgagees, judgment creditors and lienholders in respect to the compensation awarded to each owner by the verdict."
It is not necessary that the mortgagee satisfy the mortgage or waive its mortgage lien as this is accomplished by operation of law, and the eminent domain proceedings.
The mortgagee now insists that it is not only entitled to the payment of all the balance of its principal, but is also entitled to interest to the maturity date of the note. The maturity date is the date of an order of distribution. In other words, it is not contending for full compensation, determined upon equitable principles, but it is contending for a strict, full and complete compliance with each and every term of the note irrespective of equitable principles. Under the ruling of the Circuit Court, it would receive its principal in full and interest in full to the date of the order of distribution. The Mortgagee may, according to its contention, during that time before the actual maturity date fixed in the note, invest and re-invest the principal and also collect interest from the mortgagor. It would be unfair and contrary to the principles of equity and good conscience for the mortgagee to have the principal of the note and the free use and enjoyment thereof and at the same time require the mortgagor or the condemnor to pay it interest on that same principal for no other reason than that a naked legal provision of the note and mortgage, at the time it was executed, required that the mortgagor should do so.
The appellant insists that to deny it the amount of interest specified in the note until the maturity thereof is an impairment of the obligation of contract against which it is protected by the State and Federal Constitutions. Its contract may be impaired when the lien of its mortgage is completely satisfied or the property taken is completely released from the lien of its mortgage. Its lien is worth no more than the value of the property taken. When that value is ascertained, paid into the registry of the Court and is substituted for the property taken, the form of the security changes. The mortgagee has the lien upon the amount of money paid into the registry of the Court representing the value *692 of the property taken. Even though the security for the payment of its note is changed by operation of law, there has been no impairment of its contract. Full value for the land taken has been paid. It must look to the money instead of the real estate. Such terms and conditions were not provided for in the mortgage deed but all the provisions of the Constitution and the Statutes existing at the time the mortgage and note were executed were a part of the contract and it knew that such a change in the contract might be brought about by reason of eminent domain proceedings, as provided for under the law. If this constituted an impairment of the obligation of the contract, then the impairment was provided for in the Constitution and the laws.
In this particular case the correctness of the order of the Circuit Judge from which the appeal is taken becomes more apparent from an analysis of the pleadings and exhibits appearing in the record. The allegation of the note is that the maker will pay $2,550, which is the principal of the note "with interest at the rate of seven percentum (7%) per annum on the amount thereof remaining from time to time due and unpaid." In its answer the mortgagee submitted its rights to the Court and claimed that it "is entitled to be paid said principal balance" and in addition thereto, it claimed interest on such balance "until the maturity of said mortgage according to the tenor and terms thereof". It is difficult to imagine a more unjust and inequitable situation than to comply with such unreasonable demands. The mortgagee, even under the terms of the note, is not entitled to interest on the amount of principal except for the amount "remaining from time to time due and unpaid." When the Circuit Court complies with the demand set forth in the answer and causes to be paid all of the then unpaid balance of the principal, there remains no balance of principal due and unpaid on which the mortgagor is obligated to pay interest.
Many other examples of the impairment of the obligation of contract could be cited. Such impairments are provided for or recognized in the fundamental law and, therefore, do not constitute a violation of the Constitution. The police power interferes with the free use and enjoyment of property but when reasonably exercised, there is no violation of the Constitution. Even the great power of taxation may affect contracts and impair them to some extent without violating the Constitution. Special assessments based upon special benefits is a fertile field for the impairment of contracts without violating the Constitution. Lybass v. Town of Ft. Myers, 56 Fla. 817, 47 So. 346; Gailey v. Robertson, 98 Fla. 176, 123 So. 692; City of Sanford v. Dial, 104 Fla. 1, 142 So. 233; Anderson v. City of Ocala, 83 Fla. 344, 91 So. 182.
The principles of law involved in this case may affect other situations in eminent domain proceedings. We do not decide or express any opinion on questions not expressly presented by the assignments of error based upon the record.
The case should be affirmed in part and reversed in part, with directions for the trial Judge to proceed further in accordance with this opinion.
ROBERTS, C.J., and TERRELL, DREW and BARNS, JJ., concur.
THOMAS, Justice.
I dissent because this opinion does not comport with the views I recorded in my dissenting opinion in Watts v. Duval County, Fla., 75 So.2d 316.
BARNS, Justice (concurring).
Duval County (hereinafter referred to as "petitioner") filed a motion to strike from the Answer of Jacksonville Realty Investments, Inc. (hereinafter referred to as the "mortgagee") language as follows: "that said respondent is entitled to be paid said principal balance, together with interest thereon until the maturity of said mortgage according to the tenor and terms thereof, together with its reasonable costs and expenses incurred by reason of this proceeding, including reasonable attorney's fees."
*693 On July 23, 1952, the court granted the motion to the extent of striking only the words italicized. This order is the basis of all errors assigned and argued on appeal. Assignments of errors were filed by the petitioner, the mortgagee and the owners and all assignments of errors argued, and not abandoned, stem from the foregoing order and subsequent rulings in conformity therewith.
The mortgagee's assignment of error numbered one is "that the court erred in granting petitioners motion to strike"; the petitioner's assignment of error number one is "that the court erred in its order dated July 23, 1952 holding that Jacksonville Realty Investments Inc., a corporation, was entitled to be awarded an attorneys fee upon showing made" and the owner's assignment of error numbered one is the same as the mortgagee's assignment of error numbered one.
The ruling of the court as effectuated by the opinion of Mr. Justice SEBRING is confined to the foregoing assignment of errors or others of similar import and of a repetitious nature. To the extent that the opinion sustains the assignment of the petitioner, Duval County, complaining of an award of an attorney's fee to the mortgagee to be paid by the petitioner, I concur; to the extent that the assignment of error of the mortgagee is overruled, I concur; and to the extent that the assignment of error of the owners is overruled, I concur, since the owners are not aggrieved by an award of attorneys fees to the mortgagee to be paid by the petitioner.
By the condemnation proceedings the plaintiff takes the land free of the appellant's mortgage. The owner's interest has been converted into money and as between the mortgagee and the owner the court will, on equitable principles, treat the money as reconverted into land for the purposes of determining their relative rights.
By the exercise of the sovereign power of eminent domain the owner's property has been taken from him and he is no longer the owner. The appellant had a lien on the property expropriated but, by the same judicial proceedings of eminent domain, the appellant has lost the lien on the real property as the owner lost the fee to the realty. The mortgage was given subject to the rights and hazards of the property being taken for a public use. This was a hazard to the mortgagee as well as the fee owner. The exercise of the power of eminent domain does not interfere with the inviolability of contracts. Richmond, F. & P.R. Co. v. Louisa R. Co., 13 How. 71, 14 L.Ed. 55. Even the obligation of a contract is not impaired when it is appropriated for a public use and compensation made therefor; every contract is entered into subject to the right of the State. City of Cincinnati v. Louisville & N.R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481. The taker must pay compensation for what is taken and it remains for the court to determine the rights of the former owner and the former mortgagee of the land as between themselves. The status quo has been destroyed, and an equitable adjustment by the court between those affected becomes appropriate.
As to the question "due process" in fixing the compensation by the court, or the form of procedure, all that is essential is that in some appropriate way, before some constituted tribunal, inquiry shall be made as to the amount of compensation; and when this has been provided for there is that due process of law which is required by the Federal and the State Constitutions. Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853.